[No. 10257. Department One. June 18, 1912.]

## THE STATE OF WASHINGTON, *Appellant*, v. LUDOVIC DALLAGIOVANNA, *Respondent*.[1]

PERJURY—FALSE OATH—ADMINISTRATION—AUTHORITY OF NOTARY. Under Rem. & Bal. Code, § 8298, authorizing a notary public to take depositions and affidavits and administer all oaths required by law to be administered, a notary cannot, unless it is required by law, administer an oath with such binding force as is necessary to support a charge of perjury, in case of a false sworn statement.

PERJURY—FALSE OATH—POWER AND JURISDICTION OF TRIBUNAL— INVESTIGATING COMMITTEE. Since perjury can only be predicated on a false oath in a proceeding of which the tribunal had jurisdiction, an indictment is insufficient where its basis is a false oath before a committee authorized by resolution of a city council "to investigate and probe charges made by the acting mayor," without showing against whom the charges were made or that the matter was within the council or its jurisdiction.

Appeal from a judgment of the superior court for King county, Ronald, J., entered March 11, 1912, dismissing a prosecution for perjury, upon sustaining a demurrer to an indictment. Affirmed.

*John F. Murphy* and *H. B. Butler*, for appellant.

*Vanderveer & Cummings*, for respondent.

PARKER, J.—This is an appeal by the state from an order of the superior court for King county sustaining appellant's demurrer to an indictment found against him by the grand jury in that court, charging him with perjury in the second

[1]Reported in 124 Pac. 209.

degree. The following is all of the language of the indictment requiring our attention:

"On the 26th day of September, A. D. 1910, the city council of the city of Seattle duly and regularly passed a resolution; and, on the same day, the same was duly filed as required by law, which said resolution was as follows:

"Be it resolved by the city council of the city of Seattle:

"That, whereas, it appears that during the absence of H. C. Gill, mayor of the city of Seattle, one of our members, elected by this body as the acting president, has been required under the charter of the city of Seattle to assume the important office of acting mayor, and

"Whereas, the said member has, during such incumbency in that office, endeavored to subordinate the vicious element of the city to the rule of law, and by strict enforcement of the ordinances of the city has, as far as possible within the time at his command, done much to restore the city to a state of order and cleanliness, and

"Whereas, in his effort to enforce the laws, he is reported to have found conditions which indicate the existence of corruption on the part of certain persons connected with the administration of civic affairs, now, therefore,

"Be it resolved, That we commend Mr. Max Wardall, acting mayor, for the vigorous and courageous stand he has made to bring about better conditions in the city, and pledge him the sympathy and support of this body, of which he is a member. And furthermore,

"Be it resolved, That, in furthering that end, a committee of five be appointed by this council to investigate and probe the charges made by the acting mayor and report back to this body at the earliest time possible. . . .

"In pursuance of said resolution, and on said 26th day of September, 1910, a committee of five persons, namely, E. L. Blaine, J. Y. C. Kellogg, T. P. Revelle, V. P. Hart and James Conway, were duly appointed as a committee under said resolution; and, immediately thereupon, they and each of them assumed their office as said committee. On the 21st day of October, 1910, said committee were in session at said city of Seattle and were at said time investigating charges of corruption on the part of certain persons connected with the administration of civic affairs in said city, and, on the said 21st day of October, A. D. 1910, he, said

Ludovic Dallagiovanna, appeared in person before said committee in said city of Seattle, at one of its sessions then being had and held, and he, said Ludovic Dallagiovanna, then and there being, was then and there duly sworn as a witness before said committee by and before Peter A. Kimple, who was then a duly appointed, qualified and acting notary public in and for the state of Washington, residing at said city of Seattle, that the evidence which he would give before said committee should be the truth, the whole truth and nothing but the truth, he, said Peter A. Kimple, as such notary public, then and there having sufficient and competent power and authority to administer said oath to said Ludovic Dallagiovanna in that behalf, and said Ludovic Dallagiovanna, being so sworn as aforesaid, did then and there knowingly, wilfully and feloniously swear falsely that he, said Ludovic Dallagiovanna, did not then have any interest in the Sixth Avenue Hotel in the said city of Seattle, and that he did not have anything to do with said Sixth Avenue Hotel, and that he had never received any money out of said Sixth Avenue Hotel, and that he did not then know who was then running said Sixth Avenue Hotel."

The arguments of counsel for both sides are directed to the question of the authority of the notary public, before whom it is charged respondent took the oath, to administer an oath under the circumstances recited in the indictment. The arguments proceed upon the assumption that this is the controlling question touching the sufficiency of the facts alleged to constitute the crime of perjury in the second degree, which is defined by § 2353, Rem. & Bal. Code, as follows:

"Every person who, whether orally or in writing, and whether as a volunteer or in a proceeding or investigation authorized by law, shall knowingly swear falsely concerning any matter whatsoever, shall be guilty of perjury in the second degree."

It is manifest that the word "swear," as used in this section, means to state a fact or facts under the sanctity of an oath or affirmation administered by some duly qualified officer having authority to administer the oath in the par-

ticular proceeding or investigation in which the statement
of the affiant is to be made. Counsel for the state rest their
claim of authority in behalf of the notary administering the
oath mentioned in the indictment, upon the following lan-
guage of § 8298, Rem. & Bal. Code:

"Every duly qualified notary public is authorized in any
county in this state: . . .
"(3)   To take depositions and affidavits, and administer
all oaths required by law to be administered, . . ."

Now whatever may be said as to the binding force of an
oath as a basis for a perjury charge of this nature, admin-
istered by some other officer having powers defined by other
statutory provisions, we are here dealing with the powers of
a notary public as defined by this law, from which it is plain
that a notary public cannot administer any oath with any
binding force in law, except such oath is "required by law."
Whether or not the oath here involved was so required de-
pends upon the powers of the committee in the particular
proceeding or investigation they were engaged in at the time
the alleged false statements were made before it. That the .
indictment must affirmatively state facts showing that the
proceeding or investigation before the committee was such
as lay within its power to investigate by requiring the sworn
testimony of witnesses, seems too elementary to call for argu-
ment or citation of authorities in support thereof. This in-
dictment fails to inform us of the nature of the matter the
committee was authorized by the resolution to investigate,
with any degree of certainty. The resolution only purports
to authorize the committee "to investigate and probe charges
made by the acting mayor." Whom those charges were
against or what they consisted of, is scarcely hinted at by
the language of the resolution quoted in the information.
The facts alleged, we think, are not sufficient to affirmatively
show that the committee was investigating a matter which
was within either the council or its jurisdiction. This being
so, it does not affirmatively appear, from the language of

the charge made, that the oath was one "required by law;" and hence the administration of such oath by the notary public had no such binding force as is necessary to support a charge of perjury. The law relating to false sworn statements as a basis of a perjury charge, when such statements are made in a proceeding before a court or tribunal having no jurisdiction over the subject of inquiry, is well stated in the note to *Morford v. Territory*, 10 Okl. 741, 63 Pac. 958, 54 L. R. A. 513, as follows:

"It is established by numerous cases and beyond question that perjury cannot be predicated of a false oath in a proceeding before a court which had no jurisdiction to inquire into the matter which was the subject of that proceeding."

The application of this principle is illustrated in *Gallegos v. State*, 50 Tex. Cr. 190, 95 S. W. 123, where there was involved the jurisdiction of a grand jury. The court said:

"So it would appear that the grand jury were investigating or inquiring about a matter which was not a violation of the law. The court had no jurisdiction to make an inquiry except such matter as is an offense against the laws of the state of Texas. See the matter of jurisdiction discussed in *McDonough v. State*, 84 S. W. 594, 11 Tex. Ct. Rep. 972. The grand jury having under investigation a matter which was not an offense, perjury could not be predicated on false testimony delivered during such investigation."

We agree with the learned trial court, and affirm his ruling in sustaining respondent's demurrer to the indictment.

CROW, CHADWICK, and GOSE, JJ., concur.