[No. 13361. Department One. June 13, 1916.]

THE STATE OF WASHINGTON, *Appellant*, v. HENRY H. HOWARD, *Respondent*.[1]

PERJURY—FALSE SWEARING—STATUTES. A prosecution for perjury in the second degree may be predicated upon an affidavit as to the financial condition of a bank voluntarily made by one of its officers and not required by law; under Rem. & Bal. Code, § 2353, defining perjury in the second degree as false swearing concerning any matter whatsoever by any person "whether as a volunteer or in a proceeding or investigation authorized by law"; the use of the disjunctive plainly manifesting the intent to treat voluntary false swearing the same as false swearing in a proceeding or investigation.

SAME—"OATH"—STATUTES. An "oath" as a basis of a prosecution for false swearing or perjury in the second degree does not imply a form of inquiry required by law; especially in view of Rem. & Bal. Code, § 2354, defining an oath as "an affirmation and every other mode authorized by law of attesting the truth of that which is stated," and declaring that any person who shall state any matter under oath shall be deemed to swear thereto.

SAME—SWORN STATEMENTS—AFFIDAVITS BEFORE NOTARY. Under Rem. & Bal. Code, § 8298, authorizing a notary public to take affidavits and administer all oaths required by law to be administered, false swearing or perjury in the second degree may be predicated upon a false affidavit sworn to before a notary public, although the affidavit was not required by law; an affidavit being not only a written oath but a statement of things sworn to.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered January 14, 1915, upon sustaining a demurrer to the information, dismissing a prosecution for perjury in the second degree. Reversed.

*Alfred H. Lundin, W. F. Meier*, and *John D. Carmody*, for appellant.

*Eugene A. Childe, A. J. Falknor*, and *R. G. Sharpe*, for respondent.

[1]Reported in 158 Pac. 104.

ELLIS, J.—Defendant was charged, in the superior court of King county, with the crime of perjury in the second degree. The information, in substance, stated that, on December 31, 1913, he subscribed and swore to the contents of an affidavit with intent that the same be published as true, before a notary public of the state of Washington, duly commissioned and qualified, whereby he "did then and there wilfully, unlawfully, knowingly, falsely, feloniously, and contrary to his oath, swear that the condition of Christopher, Knickerbocker & Howard, Private Bank, at the close of business on December 31, 1913, was as follows:" setting out the statement of the resources and liabilities of the bank as stated in the affidavit, and charging that the statement was false in many specified particulars.

The court sustained a demurrer to the information on the ground that it did not state facts sufficient to charge a crime. The state abiding by its pleading, the proceeding was dismissed. The state appeals.

It is conceded that there is no statute of this state requiring an officer of a state bank, or any other person, to make an affidavit of its financial condition such as that set forth in the information. The sole question presented is this: Can a prosecution for perjury in the second degree be successfully predicated upon a written statement, in form an affidavit, voluntarily made but not required by law? The question is one of first impression in this state and merits careful consideration. Appellant takes the affirmative, relying upon the following statutory provisions as found in Rem. & Bal. Code:

"§ 2353. Every person who, whether orally or in writing, and whether as a volunteer or in a proceeding or investigation authorized by law, shall knowingly swear falsely concerning any matter whatsoever, shall be guilty of perjury in the second degree and shall be punished by imprisonment in the state penitentiary for not more than five years, or by imprisonment in the county jail for not more than one year."

"§ 2354. The term 'oath' shall include an affirmation and every other mode authorized by law of attesting the truth of that which is stated. A person who shall state any matter under oath shall be deemed to 'swear' thereto."

"§ 8298. Every duly qualified notary public is authorized in any county in this state,—  . . .

"(3) To take depositions and affidavits, and administer all oaths required by law to be administered; . . ."

The respondent contends that, in order to constitute perjury in the second degree under § 2353, the false oath, whether oral or in writing, must be either required by law or made in a proceeding or investigation authorized by law; citing *State v. Wilson*, 83 Wash. 419, 145 Pac. 455. In that case, the different degrees of perjury are discussed at length. It is there pointed out that our statute, § 2351, defining perjury in the first degree, is but declaratory of the common law and is intended to apply in all cases where the false oath is taken and testimony given in, or in aid of, a judicial proceeding, and that § 2353 defines and subjects to punishment other offenses against truth. But in that case we did not attempt an exhaustive analysis of § 2353, or to define its exact limits. In that case, it was contended by the state that, in so far as perjury may be committed "in a proceeding or investigation authorized by law," perjury in the second degree is included in a charge of perjury in the first degree. It was only in answer to that contention that we said:

"We cannot believe that the legislature ever intended such consequences, but rather, by adopting § 2353, it meant to cover those offenses against truth which occur in extra judicial proceedings and investigations and proceedings and investigations held by *quasi* judicial boards, commissions and committees where a false oath 'could not be held to be perjury under the theory that it operated as an 'obstruction of justice' as the stream of justice flows in the courts of the state, or in proceedings ancillary or in aid of the jurisdiction of the courts to try and determine public and private controversies. 'Proceedings or investigations authorized by law,'

must be held to mean proceedings or investigations defined by or held under the warrant of the legislative body as distinguished from an offense recognized as criminal at the common law, which is adopted in so far as it is not inconsistent as an integral part of our criminal code."

That this was not intended as marking the definite limits of the crime of perjury in the second degree, as defined by § 2353, is plainly apparent from the much broader language immediately following it:

"It is evident that § 2353 was passed to cover, by general statute, offenses which in some states have been called false swearing, and made punishable *eo nomine* by statute."

A perusal of § 2353 shows that it recognizes two kinds of swearing, namely, voluntary swearing and swearing where the witness may be compelled to testify. The word "volunteer" is plainly used in contra-distinction to the case where the witness, "in a proceeding or investigation authorized by law," may be compelled to testify; otherwise the word "volunteer" would have no meaning. The obvious intent of the statute is to treat voluntary false swearing with the same severity as false swearing in a proceeding or investigation authorized by law. The statement of the two things in the disjunctive makes this plain. When the force of this disjunctive statement is once clearly caught, every shadow of ambiguity vanishes. It is at once manifest that the words "authorized by law" neither have relation nor give a character to the oath of a "volunteer." They are part of the disjunctive phrase and can only qualify the words "proceeding" and "investigation," with which they are juxtaposed. The phrase, "or in a proceeding or investigation authorized by law," may be eliminated without in the least changing or impairing the statute, so far as it applies to voluntary oaths. For the purpose of this discussion, therefore, the statute may be read as follows:

"Every person who, whether orally or in writing, . . . as a volunteer . . . shall knowingly swear falsely con-

cerning any matter whatsoever, shall be guilty of perjury in the second degree . . ."

. So read, the statute clearly denounces false swearing by a volunteer, not alone concerning matters where an oath is required or authorized by law, but "concerning any matter whatsoever." Plainer words could not be used to convey that meaning and no other. They compel the conclusion that an affidavit, though not required by law, may be made the basis of a prosecution for perjury in the second degree.

Respondent further argues, in substance, that an oath implies the existence of some form of inquiry required by law; and that an affidavit being a sworn written statement, there can be no such thing as an affidavit unless made to be used in some proceeding, investigation or matter for which provision is made by statute. No authority is cited so holding, and we know of none. On the contrary, the very next section of the statute (§ 2354) defines the term "oath" as including "an affirmation and every other mode authorized by law of attesting the truth of that which is stated," and in order that the mode of attestation be not confused with what is stated, it adds: "A person who shall state any matter under 'oath' shall be deemed to 'swear' thereto." There is no possible implication that *any matter* means only such matters as are required by law to be so stated.

The plain purpose of § 2353 is the prevention by punishment of reckless, voluntary, false swearing, upon the faith of which others may act to their injury, as well as to prevent false swearing in extra judicial proceedings or investigations, and in proceedings or investigations authorized by law held by *quasi* judicial boards, committees and the like having the power to compel the attendance of witnesses. The legislature evidently recognized that there is as much moral turpitude and may be as great resulting injury in the one case as the other. When the extensive use of sworn statements and affidavits in the business world, though not required by law, is remembered, when the prior law, the mis-

chief and the remedy are considered, it is clear that the legislature used the broad language of our statute advisedly, to the end that the sanctity of the oath might be preserved and that no wilfully false oath concerning any matter whatsoever might be used to another's detriment with impunity.

But respondent earnestly contends that a purported oath is not an oath unless taken before some person authorized by law to take it. This must be conceded. But his further equally earnest contention, that in this state a notary public is not authorized to take an affidavit not required by law, cannot be sustained. The statute, Rem. & Bal. Code, § 8298 (P. C. 365 § 7), defining the powers of a notary public, authorizes that officer "to take depositions and affidavits, and administer all oaths required by law to be administered." It does not say "all *other* oaths required by law" so as to include affidavits in that category. It clearly treats "oaths required by law to be administered" and "affidavits" not as synonymous, nor as the one including the other, otherwise the use of the word "affidavits" would be meaningless, tautological, and worse than unnecessary, because serving merely to confuse. Both in fact and in law an affidavit is something different from an oral oath. It is defined as follows:

"An 'affidavit' is a statement in writing declared to be true by the party making it and certified to have been sworn to before him by the officer who takes it." 1 Words and Phrases (2d series), 147.

"Affidavit. A statement or declaration reduced to writing, and sworn to or affirmed before some officer who has authority to administer an oath or affirmation." 1 Bouvier, Law Dictionary (Rawle's 3d Revision), 158.

"Affidavit. A written or printed declaration or statement of facts, made voluntarily, and confirmed by the oath or affirmation of the party making it, taken before an officer having authority to administer such oath." Black, Law Dictionary (2d ed.), 46.

An affidavit is not only a written oath, but a statement of the things sworn to. It is matter of common knowledge that

from time almost immemorial affidavits have been used in business, though not required by law, whenever a solemn, formal asseveration upon which others might rely was intended. Familiar examples are affidavits touching titles to property, affidavits of financial condition for the purpose of obtaining credit, affidavits touching the pedigree of animals, sworn bank statements, and statements of the financial condition of other corporations. We must assume that the legislature, when it enacted the above statute, was possessed of knowledge of this wide and customary use of the affidavit in business matters generally. It is matter of common knowledge also that notaries have long been in the habit of taking affidavits of this character, and this, too, the legislature must be presumed to have known. This is not a criminal statute calling for a strict construction, but a statute touching the powers of an officer whose employment in the taking of affidavits touching purely business matters, though not required by law, had long existed by custom. Obviously the legislature, in passing this law, did not intend to restrict but to recognize that custom. Such is the plain, natural and practical meaning of the statute itself. Such was the plain purpose of using the word "affidavits," as well as "oaths required by law to be administered." The statute being intended to declare the powers of a notary generally, there is no warrant, either in law or logic, for construing them more narrowly merely because they become important in a criminal prosecution. Respondent, relying upon our decision in *State v. Dallagiovanna*, 69 Wash. 84, 124 Pac. 209, 40 L. R. A. (N. S.) 249, urges that the question is no longer an open one in this state, and that we there decided in so many words that "a notary public cannot administer any oath with any binding force in law, except such oath is 'required by law.'" In that case, however, we were speaking of an oral oath, not of an affidavit, and the statute is clear that it is only in connection with such oaths that the authority of the notary is limited to oaths required by law to be ad-

ministered. The language there used must be confined to oaths of the character there involved. Respondent's argument ignores the fact that the statute uses the word "affidavits" in defining the notary's authority in the premises.

As pointed out in *State v. Wilson, supra,* the crime of perjury in the second degree is closely analogous to the statutory crime of false swearing in some of the other states. Under the penal code of Texas, false swearing is defined as follows:

"If any person shall deliberately and willfully, under oath or affirmation legally administered, make a false statement by a voluntary declaration or affidavit, which is not required by law or made in the course of a judicial proceeding, he is guilty of false swearing . . ." White's Penal Code (Texas), art. 209.

The only difference between that statute and our statute defining perjury in the second degree is that, in addition to voluntary oaths or affidavits not required by law, there denounced, our statute includes any voluntary oath or affidavit, and any oath or affidavit made or taken in a proceeding or investigation authorized by law. Under the Texas statute, it was held, in *Davidson v. State,* 22 Tex. App. 372, that a county clerk who was authorized by statute "to administer all oaths and affirmations and to take affidavits and depositions, to be used as provided by law in any of the courts," and who was also generally empowered to take affidavits, could take a voluntary affidavit not required by law, and that the maker of such an affidavit before the clerk, which affidavit was false in fact, was liable to prosecution, not for perjury, but for false swearing. The court said:

"The distinction between perjury and false swearing is this, viz.: If the false statement be made in an oath or affidavit 'required by law,' or made in 'the course of a judicial proceeding,' the offense is perjury; if the false voluntary oath or affidavit is 'not required by law or made in the course of a judicial proceeding,' then it is false swearing."

Since, as we have seen, our statute defining perjury in the second degree includes voluntary false swearing "concerning any matter whatsoever," the *Davidson* case furnishes direct authority for the holding, not only that a notary, under a statute such as ours, is authorized to take affidavits not required by law, but that the voluntary maker of a false affidavit before a notary is, in this state, subject to prosecution for perjury in the second degree. See, also, *O'Bryan v. State*, 27 Tex. App. 339; *Urben v. State* (Tex. Cr.), 178 S. W. 514.

A review of the many authorities cited by respondent in support of the general rule that a charge of perjury cannot be based upon an oath not required by law would be a bootless task, since the various statutes involved were evidently not like ours.

It is true, as urged by respondent, that if there is a reasonable doubt as to the law the courts will resolve that doubt in favor of the innocence of the party charged, but our statute punishing voluntary false swearing "concerning any matter whatsoever" is too clear in its intent to admit of construction.

The judgment is reversed, and the cause is remanded for further proceedings.

MORRIS, C. J., FULLERTON, CHADWICK, and MOUNT, JJ., concur.