## AMERICAN BONDING & TRUST CO. v. COONS.

No. 8160—Opinion Filed June 6, 1917.

Rehearing Denied July 31, 1917.

(166 Pac. 887.)

**1. Guardian and Ward—Liability of Guardian—Surety.**

Where the surety upon the bond of a guardian seeks to avoid liability by virtue of a release made by the judge of the county court as provided by statute and a default upon the part of the guardian is admitted, the burden rests upon the surety to show the guardian did not misappropriate any of the funds of his ward while the bond on which he was surety was in force.

**2. Same—Release of Surety by Court.**

A surety upon a guardian's bond may be released from future liability by the judge of the county court if he complies with the statute pertaining thereto, but such release does not relieve him from liability incurred on account of the antecedent default of the guardian.

(Syllabus by Hooker. C.)

Error from District Court, Pawnee County; Conn Linn, Judge.

Action by Arthur Coons against the American Bonding & Trust Company. There was a judgment for plaintiff, and defendant brings error. Affirmed.

D. H. Wilson, for plaintiff in error.

Clark & Armstrong, for defendant in error.

Opinion by HOOKER, C. In the petition here it is alleged: That Robert Chasteen on the 15th day of May, 1902, did execute a bond as the guardian of Arthur Coons with the plaintiff in error as his surety, which bond was duly approved by the judge of the probate court of Pawnee county on the 22d day of May, 1902. That from said date until June 1, 1906, the said Robert Chasteen continued to act as said guardian by virtue of the bond aforesaid, when he executed another bond with the Columbia Bank & Trust Company in the sum of $2,000, which bond was duly approved on the 26th day of June, 1906, and thereafter on the 1st day of June, 1908, the said Chasteen executed another bond as such guardian in the sum of $1,600 with the Southern Surety Company as his surety, which bond was duly approved. That on the 27th day of September, 1913, after due notice to the said Robert Chasteen as such guardian, the judge of the county court of said county made a settlement of the accounts of the said guardian, and as a result thereof ordered and directed the said Robert Chasteen to pay to said Arthur Coons, who

had prior thereto become of age, the sum of $1,783.02; but that the said guardian had failed and refused so to do, on account of which a judgment was sought against the guardian and all of the sureties upon his bond for said money with interest thereon from September, 27, 1913.

The answer of the American Bonding & Trust Company asserts that on the 30th day of June, 1906, it was released and discharged from all future liability by virtue of its suretyship upon the bond aforesaid, to which a reply of general denial was filed.

Upon the trial thereof the defendant in error introduced the reports filed by Robert Chasteen in 1906, 1907, and 1908 and rested his case. To this evidence the company presented a demurrer, but the court declined to pass upon the same and directed the company to introduce its evidence. Thereupon the company offered in evidence the guardian's report of June 2, 1906, and the petition of the company filed in the probate court of Pawnee county to be released as the surety upon said bond, and the order of the court made on the 20th day of June, 1906, discharging it from further liability, and then rested its case. The court thereupon rendered a judgment against the plaintiff in error for the sum of $249.57 with 6 per cent. interest from January, 1916.

To reverse this case, the American Bonding & Trust Company has appealed, asserting that, inasmuch as it was released under an order of the probate court of Pawnee county in 1906, before any judgment could be rendered against it the plaintiff below should have shown that there was a breach in the obligation of the guardian's bond upon which it was a surety prior to the date of its discharge. If this be true, the plaintiff in error is entitled to prevail here; if not, the judgment of the lower court should be sustained.

Wilson's Revised and Annotated Statutes of 1903, § 1866, conferred authority upon the judge of the probate court to require a guardian to execute a new bond whenever it was deemed necessary, and that the judge of said court might discharge existing sureties from further liability after proper notice when no injury could result to those interested in the estate.

This court, in the case of United States Fidelity & Guaranty Company v. Hansen, 36 Okla. 473, 129 Pac. 66, Ann. Cas. 1915A, 402, has said: "This statute gave the authority to release the bond. * * *" See, also, Spencer v. Houghton, 68 Cal. 82, 8 Pac. 679;

Jamison v. Cosby, 11 Humph. (Tenn.) 273; Wilborne v. Commonwealth, 5 J. J. Marsh. (Ky.) 617, and 21 Cyc. 235.

The reports filed by the guardian in 1906, 1907, and 1908 merely show the amount of money with which the guardian was chargeable on said dates, and the judgment of settlement made by the county judge with the guardian, which is conclusive here, shows that the guardian had in his hands, or should have had, all during the life of the bond upon which the plaintiff in error was surety, more money than the amount of the bond or the judgment rendered here. A defalcation exists here upon the part of the guardian. He was ordered to pay the money in his hands to his ward. He has failed and refused so to do. Will the law say when this misappropriation is presumed to have taken place? Must the ward who was unable to act for himself, and who was all during the life of this bond a minor, be compelled to show that this misappropriation happened before its discharge, or does the duty rest upon the surety upon said bond relying upon said discharge and release to show that it did not occur while said bond was in force? It must be treated as settled law in this state that, if the guardian had this money in his hands when the company was released and discharged, then it is not liable for any subsequent defaults; but it is also true that it was not discharged or released from past defalcations.

It is the purpose of the law to protect the property interest of all wards and to carefully guard their rights from the conduct of their guardians. Here a surety for hire seeks to avoid paying for the default of the guardian and says the ward has not shown any default, while it was surety upon the bond. A default is shown to exist. The ward's money is gone—spent while he was unable to act or protect himself. He perhaps would not be able to show when or how his money was wasted. He has shown enough to justify a recovery against his guardian. He need show no more. The surety must pay, or show why he should not. 21 Cyc. 235, says:

"In an action against a discharged surety the burden is on him to show that the guardian was not in default when the release was made."

In Freeman v. Brewster, 93 Ga. 651, 21 S. E. 166, the Supreme Court of Georgia said:

"And where it is shown, in an action of this kind, that one of the guardians, during the minority of the ward and while the letters of guardianship were in force, received assets belonging to the ward, the burden is

cast upon the defendants to show that a legal disposition of such assets was made. * * *"

While defaults nor defalcations upon the part of guardians are not presumed to exist, yet, when the admitted facts show such to be true, it seems to be the better rule of law to require the surety upon the guardian's bond, in the absence of any evidence as to when the ward's money was spent, before a release can be relied upon as a bar to recovery, to show that the same did not happen while he was surety upon the guardian's bond. The surety is in a better position to protect himself from liability than the infant or incompetent ward is to safeguard his interests.

In Childs v. McGrew, 171 S. W. 506, the Court of Civil Appeals of Texas uses the following language:

"The burden is upon the sureties on a guardian's bond to clearly establish their defense which would relieve them of liability."

In Boyd v. Withers, 103 Ky. 702, 46 S.W. 13, the Supreme Court of that state said:

"The main question to be determined on the appeal is: On whom does the burden rest of proving the date when the insolvent guardian appropriated to his own use the funds of his wards?

"It is claimed by the appellee that he can be held responsible only for such acts of maladministration of the guardian as are proven to have been done while he was surety on the bond; that in the absence of such proof the presumption is that the funds of the wards were in the hands of the guardian, intact, at the date of the execution of the new bond; that to overcome this presumption and hold appellee liable the burden of proof is upon appellants to show affirmatively that the waste complained of was committed by the guardian during the existence of the first bond, and that the record is wholly wanting in proof conducing to establish this fact.

"It is true that in the vast majority of instances the burden of proving any fact lies upon the party who substantially asserts the affirmative of the issue. This is a rule of convenience, adopted, not because it is impossible to prove a negative, but because the negative does not admit of the direct and simple proof of which the affirmative is capable; yet there are exceptions to this general rule recognized by all the authorities. When a fact is more particularly within the knowledge of one party than the other, the burden of proof is on such party, as the law will not force a party to show a fact which by intendment of law is not within his knowledge. See Greenleaf on Evidence, § 78, and 1 Rice on Evidence, 117.

"And this case illustrates the justness of this exception. The guardian knows the time when he appropriated the funds of his infant wards to his own use, and the security upon his bond, by reason of the relation existing between them, presumably also has knowledge of this fact, whilst, on the other hand, it is manifestly improbable that the infant wards can have any information on this point."

The Supreme Court of the United States, in Farrar et al. v. United States, 5 Pet. 389, 8 L. Ed. 159, said:

"On this state of facts the bill of exceptions asserts three grounds of defense: (1) That the sureties could not be liable at all for the money so paid. (2) That, if at all, they ought to be let into proof that Rector had appropriated the money to his own use before the date of the bond. Or (3) * * *

"On these points we feel no difficulty in affirming that for any sums paid to Rector prior to the execution of the bond there is but one ground on which the sureties could be held answerable to the United States, and that is on the assumption that he still held the money in the bank or otherwise. * * * They ought therefore to have been let into proof of the actual state of facts, so vitally important to their defense; * * * since this defense goes, not to discharge a liability incurred, but to negative its ever existing."

The ward here received from the surety upon the last bond the full amount of its liability. And inasmuch as the evidence fails to show that, at the time of the release of the plaintiff in error upon the bond of this guardian, the money of the ward was in his hands, we must hold that the judgment of the lower court holding the plaintiff in error liable upon the bond of the guardian was proper.

The judgment of the lower court is therefore affirmed.

By the Court: It is so ordered.