## TITLE GUARANTY & SURETY CO. v. FOSTER et al.

Rehearing Denied March 8, 1921.

2nd Rehearing Denied Jan. 24, 1922.

(Syllabus.)

1. **Guardian and Ward—Suit by Guardian—Representative Capacity—Petition.**

A person who describes himself as guardian of another will be taken to sue in his representative, and not in his personal, capacity, where the allegations of the petition taken as a whole show clearly that it was his intent to sue as guardian.

2. **Same—Action by Guardian Alone to Recover Assets of Estate.**

Under the authority of section 4683, Rev. Laws 1910, authorizing an executor, administrator, guardian, etc., to bring an action without joining the person for whose benefit it is prosecuted, the guardian has authority to commence and prosecute in his own name as such, without joining his ward, an action to recover assets of and debts and liabilities due to the estate of his ward.

3. **Guardian and Ward—Guardian's Bond—Release of Sureties—Authority of Court.**

In the absence of statutory authority, the county courts have no jurisdiction to release or consent to the release of the sureties on the guardian's bond. Section 6580, Rev. Laws 1910, in authorizing the county court to release the existing sureties on a guardian's bond from further liabilities, conditions the release and discharge of the existing sureties upon the execution of a new bond to be given by the guardian as a substitute for the discharged bond.

4. **Same—Proceeding for Release of Sureties—Judgment—Conclusiveness.**

Where the county court's jurisdiction is properly invoked on a petition to discharge sureties on a guardian's bond, the amount of the substituted bond and sufficiency of the sureties are questions for the county court, and the judgment of the county court rendered in such matter in the exercise of its jurisdiction is, in the absence of fraud, binding and conclusive unless reversed on appeal.

5. **Same—Substitution of Bond—Validity.**

The order of the county court releasing sureties on the $35,000 guardian bond and accepting in lieu thereof a $1,000 bond, coupled with the order that the guardian shall not use or in anywise control any of the moneys, funds, or other property belonging to the ward, except upon the authority of the court expressly given, and ordering all funds of the estate to be deposited in a certain bank, with directions that none of the funds so deposited shall be paid out except upon express order of the court, is void, because the court has no jurisdiction to substitute the bank and itself for the guardian bond required by the statute.

**6. Guardian and Ward—Depository of Funds—Right of Court to Designate.**

If the county court is advised that the guardian has the ward's funds in a failing or insolvent institution, it may direct him to withdraw them and deposit them in some solvent bank, but the county court has no authority to designate the particular bank as the depository. The guardian and his sureties are financially responsible for the ward's funds and have a right to select the depository at their risk.

**7. Judgment—Collateral Attack — Jurisdictional Elements.**

While a judgment rendered in the exercise of jurisdiction cannot be impeached collaterally, the three jurisdictional elements necessary to sustain a judgment may be inquired into by an inspection of the judgment roll on a collateral attack. The three jurisdictional elements entering into the validity of every judgment are: (1) jurisdiction of the parties, (2) jurisdiction of the subject-matter, and (3) judicial power to render the particular judgment, which means jurisdiction of the particular matter which the judgment professes to decide. If either of these three elements is shown by the judgment roll to be missing, the judgment is void and may be successfully attacked collaterally.

**8. Guardian and Ward—Validity of Guardian's Bond for Benefit of More Than One Ward.**

The fact that a guardian makes a single bond for the benefit of more than one ward does not vitiate it, even though it expresses a joint obligation as to the wards, while the statute requires it to be several.

**9. Same—Action on Joint Bond—Parties.**

If the obligees of a guardian's bond are joint, they must all be parties to the action on the bond, either as plaintiffs or defendants, as required by section 4692, Rev. Laws 1910.

**10. Same.**

The reason of the rule requiring joint obligees to be parties is that the cause of action is one and entire.

**11. Bonds—Rule of Construction.**

In case of ambiguity or doubtful construction, a bond should be construed in the light of the circumstances surrounding the execution thereof, the object to be accomplished, the situation of the parties, and the relations existing between them. The nature of the duty of the obligor and the character of the obligee must also be regarded as explanatory of the intent.

**12. Guardian and Ward—Action on Guardian's Bond Naming Five Wards—Amount of Recovery.**

The guardian executed a general guardian bond with sureties, naming therein five wards as obligees; the penalty named in the bond is $3,300; there is no provision in the bond reciting that the maximum penalty may be recovered by each of the wards. Held, that $3,300 is the maximum penalty, and that no more than that amount as penalty can be recovered against the sureties by the obligees, either separately or jointly.

**13. Same—Joint and Several Obligation — Parties.**

The guardian of five minors executed with a surety one bond reciting therein the five minors as obligees. Held, the obligees are several, and not joint, and the bond is, in effect, the joint and several obligation of the principal and surety to each of the obligees in the sum of one-fifth of the penalty named in the bond. Held, that one of the obligees can maintain an action against the principal and surety on the bond without making the other obligees parties.

**14. Bonds—Bond to Two or More Obligees —Joint or Several Obligation.**

A bond given to two or more obligees may be given to them jointly or severally, but not jointly and severally, unless clearly and unmistakably so expressed in the bond. The general rule is that if the interest of the obligees is joint, the bond will be deemed to have been given to them jointly; if their interests are several, then severally.

**15. Guardian and Ward—Action on Guardian's General and Special Bonds—Burden of Proof—Liability on Special Bond.**

A general guardian executed a bond with surety conditioned to be void if the guardian leased the land of his ward with fidelity and well and faithfully accounted for all moneys, rents, profits, and other things of value received by him under such lease. The guardian also had a general guardian bond. In an action against the guardian and his sureties on his general guardian bond and his surety on the lease bond, the burden of proof was on the surety in the lease bond to prove that no part of the money received by the guardian under the lease constituted a part of the guardian's misappropriation and shortage in his accounts.

**16. Appeal and Error—Cross-Petition in Error—Sufficiency of Proceedings.**

The filing of a cross-petition in error attached to a transcript or case-made previously filed in the Supreme Court to reverse or modify the judgment or final order of the trial court, is the commencement of a proceeding in error in the Supreme Court at the instance of the party filing the cross-petition in error. Such constitutes a cross-appeal, and such cross-appeal will not be dismissed because the cross-plaintiff in error did not prepare, serve, and have settled a case-made and file same with his cross-petition in error, it appearing that the cross-petitioner filed a motion for a new trial and gave notice of appeal, as provided by section 5238, Rev. Laws 1910, as amended by act approved March 23, 1917.

**17. Guardian and Ward—Waiver by Guardian of Infant's Legal Rights—Validity.**

An infant is not bound by a stipulation of his guardian waiving a substantial legal right, it appearing that the guardian's stipulation was evidently founded on a mistake of law.

Error from District Court, Washington County; R. B. Boone, Judge.

Action by B. B. Foster, guardian of Everett Bible, a minor, against Lewis Bible, former guardian, and his sureties on several guardian bonds. Judgment for plaintiff, and he and defendants American Surety Company and Title Guaranty & Surety Company bring error. Judgment affirmed in part, and modified in part.

On March 11, 1914, the defendant in error and cross-plaintiff in error, as plaintiff below, commenced this action against Lewis Bible and the other defendants as his sureties on his guardian bonds. On July 3, 1903, Lewis Bible was appointed by the United States Court for the Northern District of the Indian Territory, guardian of the estate of Everett Bible, Vera Bible, Ary Bible, James Phillip Bible, and Chris Bible, minors; on that same day he executed a general guardian bond on behalf of all the minors in the penal sum of $3,300 with the American Surety Company of New York, one of the defendants, as surety thereon; thereafter the guardianship proceedings, in so far as they pertained to the estate of Everett Bible, were transferred to the United States Court sitting at Bartlesville, and upon the admission of the state passed into the county court of Washington county, Oklahoma; before said proceedings were removed to Bartlesville, Lewis Bible, as guardian of Everett Bible, on November 9, 1903, executed a special lease bond in the penal sum of $500 with the American Surety Company of New York as surety thereon, conditioned that if the guardian should conduct the leasing of the land of said ward with fidelity and well and faithfully account for and turn over all moneys, rents, profits, and other things of value received by him under such lease, the bond should become null and void. On the 8th day of November, 1907, Lewis Bible, as guardian of Everett Bible, executed a general guardian bond in the penal sum of $35,000 with the defendant, Title Guaranty & Surety Company as surety; thereafter the Title Guaranty & Surety Company, being dissatisfied with the risk assumed, filed a petition in the county court of Washington county in said guardianship proceedings, praying that the guardian be ordered to execute a good and sufficient bond and that petitioner be exonerated from further liability. Without reviewing the procedure and deciding the regularity thereof leading up to the final judgment of the county court releasing it as surety, suffice it to say that on the trial of this case in the district court it was agreed that at the time the order of release was entered by the county court on August 26, 1908, the guardian was not short in his accounts and there was no accrued liability on the bond. On August 26, the county court, after giving notice to the guardian, entered an order reciting that the guardian "having heretofore filed his personal bond in lieu of the bond made by the Title Guaranty & Surety Company and said bond being sufficient," it is ordered that said surety company be and is hereby released from further liability on the bond and that said bond is hereby canceled. As a part of the order releasing the surety company, the court entered the following judgment:

"It is further ordered by the court herein, that the above-named guardian shall not use or in anywise control any of the moneys, funds, or other property belonging to the above-named ward, or that may hereafter be paid to the above-named ward, except upon authority so to do by the court expressly given said guardian, and all persons owing said above-named minor are hereby ordered to pay said indebtedness when it is due and payable into the Bartlesville National Bank for the benefit of said minor, and said Bartlesville National Bank is herein ordered to pay no money to any one out of the funds of said ward so placed, except upon express orders of this court."

On August 10, 1908, Lewis Bible executed a general guardian's bond in the penal sum of $1,000 with the defendants George B. Keeler and A. D. Morton as sureties, and on October 3, 1908, executed an additional guardian's bond in the sum of $2,500 with the defendant Southern Surety Company as surety. On October 6, 1911, the county court of Washington county entered an order removing Lewis Bible as guardian of Everett Bible, and in an accounting then taken found that Lewis Bible was short in his guardianship account in the sum of $8,692.77. The guardian appealed from that decision of the county court to the district court, and on October 13, 1913, the district court affirmed the judgment of the county court in removing the guardian, but found that his shortage was only $6,995.52. The present guardian sued Lewis Bible and all of his sureties and recovered a judgment on October 1, 1917, for $6,995.52, with interest, making a total sum of $8,659.36, with interest on that amount from the date of the judgment.

The court adjudged that the Title Guaranty & Surety Company had not been legally

released from its $35,000 bond and ordered the judgment to be apportioned pro rata among said sureties, according to the amounts of their respective bonds. The plaintiff and the defendants American Surety Company and Title Guaranty & Surety Company, appeal to this court.

Charles W. Pennel and W. A. Chase, for the Title Guaranty & Surety Company.

Rowland & Talbott, for the American Surety Company of New York.

Foster & O'Neil, for B. B. Foster, guardian.

Stanard & Ennis, for defendant in error Southern Surety Company.

RAMSEY, J. (after stating the case as above). 1. This case was commenced under the style of "Frank A. Foster, as guardian of the person and estate of Everett Bible, a minor," and the first paragraph of the petition recites that "the plaintiff Frank Foster, as guardian, states" that he was duly appointed guardian, etc. A person who describes himself as guardian of another will be taken to sue in his representative and not in his personal capacity where the allegations of the petition taken as a whole show clearly that it was his intent to sue as guardian. Bennett v. Bennett, 65 Neb. 432, 91 N. W. 409.

2. It is contended that the guardian has no capacity to commence this suit; that it should have been commenced in the name of Everett Bible, by his guardian, Frank A. Foster. In support of that contention, counsel for the Title Guaranty & Surety Company confidently cite Title Guaranty & Surety Co. v. Slinker, 35 Okla. 128, 128 Pac. 696, and Lyons v. Fulsom, 54 Okla. 84, 153 Pac. 868. Neither of those cases sustains the contention. Those decisions hold that an infant by guardian may maintain a suit, and there is no doubt about that. They do not hold that the guardian cannot maintain a suit in his own name as such. It is true, at common law, that a guardian cannot sue in his own name for the benefit of the ward where the legal right or title involved is vested in the ward and not in the guardian. 10 Standard Proc. 858. 30 Cyc. 96, says:

"A considerable number of the codes, however, expressly class the guardian with 'trustees of an express trust,' executors or administrators, and 'persons expressly authorized by statute' as a representative plaintiff who may sue in his own name without joining his beneficiary."

10 Standard Proc. 860, says:

"In some states any action in which the ward has an interest and in which the recovery will inure to his benefit, may be brought by the guardian in his own name, and in others certain actions only may be thus instituted."

The same authority further says, on page 861, that "where the question of the ward's title is involved * * * the general rule" is that "the guardian should proceed in the name of the ward in the absence of any statute empowering the guardian to sue in his own name."

Pomeroy's Code Remedies (4th Ed.) sec. 110, says:

"How far general guardians of infants, testamentary or appointed by the probate courts, are authorized to maintain actions in their own names, relating to the personal property of their wards, depends rather upon the provisions of the statutes which define their powers and duties than upon those of the Codes. The Codes in general can hardly be deemed to have enlarged their powers in this respect. **In a few states, the guardian is specifically mentioned and coupled with the executor and administrator in the section of the statute under consideration; and this language may be interpreted as authorizing him to sue in respect of all property which is under his control by virtue of his office.**" (Emphasis ours.)

Turning to the Oklahoma statutes, we find section 4683, Rev. Laws 1910, expressly authorizes the guardian to bring suit without joining the ward with him. That section is as follows:

"An executor, administrator, guardian, trustee of an express trust, a person with whom, or in whose name, a contract is made for the benefit of another, or a person expressly authorized by statute, may bring an action without joining with him the person for whose benefit it is prosecuted. Officers may sue and be sued in such name as is authorized by law, and official bonds may be sued upon in the same way."

There is no doubt about the guardian having authority to commence and prosecute in his own name, as such, without joining his ward, an action to recover assets of and debts due to the estate of his ward, and such is the holding of this court in Kerr v. McKinney, 69 Oklahoma, 170 Pac. 685. Construing sections 4681 and 4683 with sections 4686, 4688, and 6543, Rev. Laws 1910, there is no doubt about the staututory authority of a guardian in this state to maintain a suit in his own name, as such, without naming his ward as a party. In the absence of such statutes, the question as to whether or not the guardian could commence and prosecute a suit in his own name or the action had to be commenced in the name of the minor by guardian, depends on whether the legal title is in the minor or in the guardian for the minor. Cole v. Jerman, 77 Conn. 374, 59 Atl. 425; Campbell v. Fichter (Ind.) 81 N. E. 661.

3. The Title Guaranty & Surety Company next contends that the order of the county court of August 26, 1908, releasing it from further liability upon its bond and accepting the $1,000 bond signed by the guardian with George B. Keeler and A. D. Morton, sureties, operated to terminate its liability for any shortage occurring after the date of that order, and that, it being admitted that there was no shortage in the guardian's accounts at the time the order of release was entered, the judgment against it in this case must be reversed. The authority to release a guardian's surety is contained in section 6580, Rev. Laws 1910, which is as follows:

"The judge of the county court may require a new bond to be given by a guardian whenever he deems it necessary, and may discharge the existing sureties from further liability, after due notice given as he may direct, when it shall appear that no injury can result therefrom to those interested in the estate."

In the absence of statutory authority, the county court has no jurisdiction to release the sureties on a guardian's bond. The guardian's bond for the faithful performance of his duties and the honest administration of the estate is indispensible to a legal maintenance and continuation of the relationship of guardian and ward—that is, guardian of the estate. Section 6532, Rev. Laws 1910, declares that the order appointing a guardian shall not take effect until a bond approved by the judge with sufficient sureties is required, and no letters of guardianship can issue until the bond is filed and approved. There can be no legal statutory guardianship without a bond with sufficient sureties. The bond cannot be dispensed with so long as the guardianship continues. No court has authority to dispense with a guardianship bond. Section 6580, Rev. Laws 1910, in authorizing the county court to discharge the existing sureties from further liability, conditions the release and discharge of existing sureties upon the execution of a new bond to be given by the guardian as a substitute for the discharged bond. These conclusions are warranted by the opinion of this court in Aetna Accident & Liability Co. v. Langley, 68 Oklahoma, 174 Pac. 1046. See, also, Woerner on Guardianship, p. 144. Where the county court's jurisdiction is properly invoked on a petition to discharge sureties of a guardian, the amount of the substituted bond and sufficiency of the sureties are questions for the county court. How much the new bonds shall amount to, whether the same as the old, or less, is a matter within the judgment of the county court. It is the duty of the county court to require a sufficient bond with sufficient sureties, but the amount thereof is a question for that court, and in the absence of fraud, its judgment cannot be inquired into in a collateral proceeding in an action on the bond. In this case, at the time the $35,000 bond of the Title Guaranty & Surety Company was released, on August 26, 1908, the estate approximated $25,000. Assuming that the $1,000 bond executed by Morton and Keeler as sureties was the bond referred to in the court's release order of that date, as having theretofore been filed "in lieu of the bond made by the Title Guaranty & Surety Company," it appears that upon the release of the Title Guaranty & Surety Company, the ward's estate was protected by bonds aggregating only $1,650, plus a $500 lease bond. While the judgment of the county court, rendered in the exercise of its jurisdiction, is just as binding as the judgment of any other court of general jurisdiction, we think the county court did not accept the $1,000 bond executed by Keeler and Morton in lieu of the $35,000 bond. The order of release on its face conclusively shows that the court did not regard the $1,000 bond anything like adequate security for the minor, and therefore, by the order purporting to release the Title Guaranty & Surety Company, the court undertook to take the estate out of the hands of the guardian and place it under the joint control of the Bartlesville National Bank and the court, for whose administration and preservation of the funds no security was required or given. Section 6544, Rev. Laws 1910, says:

"Every guardian must manage the estate of his ward frugally and without waste, and apply the income and profits thereof, as far as may be necessary, for the comfortable and suitable maintenance and support of the ward, and his family, if there be any: and if such income and profits be insufficient for that purpose, the guardian may sell the real estate, upon obtaining an order of the county court therefor, as provided, and must apply the proceeds of such sale, as far as may be necessary, for the maintenance and support of the ward and his family, if there be any."

Section 6569, Rev. Laws 1910, provides that the county court "may make such other orders and give such directions as are needful for the management, investment and disposition of the estate and effects, as circumstances require." And section 3330, Rev. Laws 1910, authorizes the court appointing a guardian "to control him in the management and disposition of the person and property of his ward." But neither of these sections of the statute empowers the county court to appoint a guardian, approve his bond, and then strip him of all authority conferred upon him by the statutes. The guardian is the arm of the court, and by

virtue of his appointment the court may control the management and disposition of the estate through the guardian. The Bartlesville National Bank, as the depositary of the funds, did not become a guardian of the estate, was not treated as such by the court, was not required to make any bond as a guardian, and that part of the order of August 26, 1908, stripping the guardian of all control over the moneys, funds, and other properties belonging to the ward, and requiring the funds to be deposited in the Bartlesville National Bank subject to be drawn out only on the express orders of the court, was void and beyond the jurisdiction of the court. The county court has no jurisdiction to designate any bank as the depositary to be used by a guardian. If the court is advised that the guardian has the ward's funds in a failing or insolvent institution, it may direct him to take them out and deposit them in some solvent bank, but there is no authority conferred upon the court to name the depositary. The guardian and his sureties are responsible for the funds. The court is not financially responsible. The guardian and his sureties being responsible, it is their business to select the depositary. The law looks to the guardian and his sureties for the safe return of the ward's estate, and the county courts in this state have no jurisdiction to make a bank or any other person or corporation an appendage to a guardianship. In re Bolin's Estate, 22 Okla. 851, 98 Pac. 934; DeGreayer v. Superior Court, 117 Cal. 640, 59 Am. St. Rep. 220; In re Welch, 110 Cal. 605, 42 Pac. 1089. Instead of requiring the guardian to give a new bond in lieu of the $35,000 bond, the order of August 26, 1908, releasing the surety, shows on its face that the court, instead of requiring such a substituted bond, undertook to denaturize the guardian and administer the estate himself through the Bartlesville National Bank as the favored custodian of the moneys belonging to the estate. The order undertaking to release the Title Guaranty & Surety Company as surety is void because it clearly and unmistakably appears on its face to have been made on the erroneous assumption that the court had jurisdiction to release the guardian's surety upon the substitution of two things in view thereof, to wit: (1) a new bond (undoubtedly wholly inadequate of itself), and (2) an order stripping the guardian of all power over the assets and vesting a bank and the court with direct administrative control over same. If the court considered the new bond (concededly inadequate) a substitute for the $35,000 bond, why did it undertake to place the estate beyond the control of the guardian and therefore in a situation where a bond would serve no

purpose? If the guardian could not handle the assets, how could he render his sureties liable? The acceptance of a new bond in lieu of the bond released is a jurisdictional condition to the discharge of the sureties on the existing bond, and that was not done in this case. But it is insisted that the county court had jurisdiction over the subject-matter, that its jurisdiction was properly invoked and that its order of release, whether right or wrong, was made in the exercise of jurisdiction and therefore binding. There is no doubt about the legal proposition that a judgment of a court in the exercise of a legally acquired jurisdiction over the person and subject-matter is binding on all the parties, and whether its decision was right or wrong cannot be inquired into except upon writ of error or appeal. Of course, it may be impeached for fraud. However, a successful collateral attack can be made against the validity of a judgment of a court of general or limited jurisdiction when it affirmatively appears from an inspection of the judgment roll that either of the three following elements is absent, to wit: (1) Jurisdiction over the person; (2) jurisdiction of the subject-matter; and (3) judicial power to render the particular judgment. If either of these three elements is shown by the judgment roll to be missing, the judgment is void on its face— that is to say, it is void on the face of the record, and, being void, it "will be so held and treated whenever and wherever and for whatever purpose it is sought to be used or relied on as a valid judgment." Black on Judgments (2nd Ed.) vol. 1, sec. 170 and sec. 218. In Miller v. Mills, 32 Okla. 388, 122 Pac. 671, this court said that "where a party relies upon a judgment, and introduces it in evidence, the opposite party may always inquire into the jurisdiction of the court to render it." See, also, Condit v. Condit, 66 Okla. 215, 168 Pac. 456; Pettis v. Johnston, 78 Okla. 277, 190 Pac. 681. Assuming, without deciding, that the proper procedure to obtain a release as surety was followed and that the county court therefore acquired jurisdiction to act, yet, if the court rendered a judgment in excess of its jurisdiction, that is, rendered a judgment it had no power to render, such judgment is void and may be successfully assailed on collateral attack. A court may have jurisdiction over the parties and over the subject-matter and yet its particular judgment be void unless it possessed jurisdiction to render that character of judgment. Thus, to illustrate, the district court has jurisdiction in ejectment cases, but a judgment of divorce rendered in an ejectment suit, commenced by the husband against the wife, would be absolutely void

because the court had no jurisdiction to render the particular judgment in that case. Thus, in the recent case of United States v. Ward, 257 Fed. 372, the United States Circuit Court of Appeals for the Eighth Circuit says:

"The language of the complaint, in referring to the items which it is sought to recover, speaks of them as having been allowed to the referees. The trial court assumed, and it may have been justified in so doing, that it had the right to consider the excess fees, costs, and compensations as having been allowed by the United States District Court. The case being thus viewed, it sustained the demurrer by invoking the general principle that, where a court has once acquired jurisdiction, it has the right to decide every question which arises in the cause, and its judgment, however erroneous, cannot be collaterally assailed. The general principle as stated is correct, but, like all general principles, is subject to many qualifications in its application. The district courts have a general jurisdiction in bankruptcy, but they have no power, when exercising that jurisdiction, to allow a referee, under any form or guise, any other or further compensation for his services as referee than that expressly authorized and prescribed by the bankruptcy law. It cannot transcend the power conferred by law. If a court has jurisdiction of an action on a money demand, it cannot in that action imprison the defendant. If it has jurisdiction of an action for libel, specific performance of a contract cannot be decreed in that action. If it has jurisdiction of an action for the possession of real property, the court cannot in that action probate a will. Such judgment, if rendered, would not be merely erroneous, but absolutely void. Windsor v. McVeigh, 93 U. S. 274, 23 L. Ed. 914; United States v. Walker, 109 U. S. 258, 3 Sup. Ct. 277, 27 L. Ed. 927; Ex parte Lange, 18 Wall. 163, 21 L. Ed. 872.

"The principle invoked is better stated by Justice Swayne in Cornett v. Williams, 20 Wall. 250, 22 L. Ed. 254, as follows:

" 'That jurisdiction having attached in the original case, everything done within the power of that jurisdiction, when collaterally questioned, is to be held conclusive of the rights of the parties, unless impeached for fraud.'

"In United States v. Walker, supra, Justice Woods said:

" 'Although a court may have jurisdiction over the parties and the subject-matter, yet, if it makes a decree which is not within the powers granted to it by the law of its organization, its decree is void.'

"When a court has power to fine only, and it also imprisons, the imprisonment is void. Ex parte Lange, supra."

While a judgment rendered in the exercise of acquired jurisdiction can never be impeached collaterally (Mastin v. Gray, 19 Kan. 461, 27 Am. Rep. 149; Foltz v. St. L. & S. F. R. Co., 60 Fed. 317; Moffer v. Jones, 67 Oklahoma, 169 Pac. 652; Pettis v. Johnston, supra), the three jurisdictional elements necessary to sustain a judgment may be inquired into by an inspection of the judgment roll on a collateral attack. The three jurisdictional elements entering into the validity of every judgment are: (1) Jurisdiction of the parties, (2) jurisdiction of the subject-matter, and (3) jurisdiction of the particular matter which the judgment professes to decide. See Jefferson v. Gallagher, 56 Okla. 405, 150 Pac. 1071; Rogers v. Duncan, 57 Okla. 20, 156 Pac. 678; Pyeatt v. Estus, 72 Oklahoma, 179 Pac. 42; Withers v. Patterson, 27 Tex. 491, 86 Am. Dec. 643; Ex parte Degener (Tex. Civ. App.) 17 S. W. 1111; Black on Judgments (2nd Ed.) vol 1, sec. 171.

4.    This brings us to the appeal of the American Surety Company. On July 3, 1903, Lewis Bible was appointed guardian of the estate of Everett Bible, and four other infants, and on that date filed a general guardian bond in the sum of $3,300 with the American Surety Company as surety, in which all five of the minors are named as obligees. Section 3489, Mansfield's Digest of the Laws of Arkansas, then in force, provided that the guardian, before entering upon the duties of his office, should give a bond with security "for the use of the minors respectively, in double the value of the estate or interest to be committed to their care, conditioned for the faithful discharge of their duties according to law"; meaning by the word "their," the guardian. In Turner v. Alexander, 41 Ark. 254, the court held that a guardian's bond is not invalid because made to several wards jointly, the court saying that "the bond was valid, and as effective as if the guardian had executed three several bonds to secure each of his wards respectively." The court further said that it was better practice to have separate bonds, inasmuch "as the accounts and settlements should be separate and the guardianships should be kept distinct from each other." And in further comment the court said: "Yet, where no injustice has been done, this court does not avoid the action of the probate courts for want of due form, in matters within their jurisdiction." 23 Cyc. 223, says:

"The fact that a single bond is given for the benefit of more than one ward does not vitiate it as a statutory bond, even though it expresses a joint obligation as to the wards while the statute requires it to be several. But it is the better practice to take a separate bond for each ward."

See, also, Brunson v. Brooks, 68 Ala. 248; Woerner on Guardianship, p. 122; Deegan v. Deegan (Nev.) 58 Am. St. Rep. 742; Hooks v. Evans, 68 Iowa, 52, 25 N. W. 925.

The trial court rendered judgment against the American Surety Company for the full amount of the bond, to wit, $3,300. The American Surety Company contends (1) that the judgment is excessive because it is only liable in this action for one-fifth of the bond, $650, there being five minors, and (2) that under no circumstances could a judgment for more than $650 be rendered against it without the other wards being parties to this suit. In its answer, it pleads a defect of parties in this respect. The solution of these questions depends wholly upon whether or not the obligees under the bond are joint or several. Of course, the obligors' liability is joint and several. If the obligees are joint, then they must all be parties to the action on the bond, either as plaintiffs or defendants, as required by section 4692, Rev. Laws 1910, which provides that "Of the parties to the action, those who are united in interest must be joined as plaintiffs or defendants; but if the consent of one who should have been joined as plaintiff cannot be obtained, he may be made a defendant, the reason being stated in the petition." 9 C. J. p. 87, says:

"Where a bond is made to two or more obligees jointly, and there is nothing in the instrument showing the interest of such obligees to be several, they should all join as plaintiffs in an action thereon, unless a sufficient excuse for not joining co-obligees is alleged in the complaint, or unless a separate suit is permitted by statute. This rule applies notwithstanding only one of the obligees is injured, as the suit should be in the name of all the obligees for his use, although it has been held that such obligee may sue either in his own name or in the name of all to his use. However, both under the codes of practice and in equity, one joint obligee may sue on a bond if his co-obligee refuses to join in the action, or where he has purchased the interest of his joint obligee, is the owner of the bond, and the real party in interest therein. Where the obligees' interests are several, they may join in the suit where it appears that the bond is joint in form; but in such a case it has been held also that separate actions may be maintained by each. **Where the bond is not a joint one, persons severally interested therein cannot sue jointly on the bond, but must sue separately.**" (Emphasis ours.)

The reason of the rule requiring joint obligees to be parties is that the cause of action is entire and cannot be split up. Although the liability of the obligors may be joint and several, the right of recovery in joint obligees is entire and indivisible, and in what

proportion the obligees divide the recovery between themselves is of no concern to the obligors. One judgment protects the obligors. Thomas v. Green County, 159 Fed. 339, 343, 89 C. C. A. 405; Pomeroy's Code Remedies (4th Ed.) sec. 142. Section 4692, Rev. Laws 1910, does not abrogate the common-law doctrine, but merely modifies it in the particular of permitting joint obligees to be made defendants who refused to join as plaintiffs. Pomeroy's Code Remedies (4th Ed) sec. 143, also sec. 130. Hammon on Contracts, sec. 374, says:

"If a promise is made for the benefit of several persons jointly, all are jointly entitled, and any number of them less than all may not enforce the promise. All must join in the suit. A formal joinder of the promisees as parties plaintiff is all that the law requires. It is immaterial that all do not actually consent to the suit. It is sufficient if all their names appear as plaintiffs; and for this purpose the law allows any one of them to use the names of the others whether they consent or not."

The same authority further says:

"If one of several joint promisees accepts satisfaction of the obligation it operates as a satisfaction as to all, and a release of the obligation by one is a release as against all."

In case of death of one or more of the joint obligees in the bond the action should be brought in the name of the survivor or the survivors alone, and on the death of the last surviving obligee, his representative alone has capacity to sue on the bond. 9 C. J. 88; Hammon on Contracts, sec. 374.

It is clear that if the obligees are joint, all the obligees must be parties to the action on the bond. There can be but one satisfaction of the bond. $3,300 is the maximum penalty. United States Fidelity & Guaranty Co. v. Parker (Wyo.) 121 Pac. 531. 536; Hooks v. Evans, 68 Iowa, 52, 25 N. W. 925; Knox v. Kearns, 73 Iowa, 286, 34 N W. 861; Trumpler v. Cotton, 109 Cal. 250. 41 Pac. 1033; Edmonds v. Edmonds, 73 Iowa, 427, 35 N. W. 505; United States Fidelity & Guaranty Co. v. Nash (Wyo.) 121 Pac. 541, and on rehearing, 124 Pac. 269. The plaintiff, the present guardian, contends that he is entitled to recover for the use and benefit of his ward the entire penalty of the bond because the shortage of the former guardian in his accounts as guardian of his ward, one of the obligees, exceeded the penalty of the bond. In other words, he contends that if the guardian, as principal in a bond, misappropriates out of the estate of one of the obligees money and property in an amount equivalent to the penalty, that single obligee can recover the entire penalty. If that be true, it is obvious that the other obligees

should be made parties in order that an accounting may be had for the purpose of determining whether or not there is any shortage of the guardian with respect to their separate estates. If the obligees are joint and the entire penalty can be recovered on account of the shortage in the accounts of one of the obligees, then the other obligees are denied not only future security under the bond, but are denied security for shortages and defalcations of the guardian in their particular estates prior to the recovery on the bond, and yet the court is powerless in this case to settle that matter.

In our opinion the obligees are several, and not joint, and the bond is in effect the joint and several obligation of the principal and surety to each of the obligees in the sum of $650, and the other obligees were not necessary parties to this suit, as we shall herein explain. We think the Supreme Court of Arkansas meant to say that in Turner v. Alexander, 41 Ark. 254, from which we have heretofore quoted. 9 C. J., p. 33, says:

"In case of ambiguity or doubtful construction the bond should be construed in the light of the circumstances surrounding the execution thereof, the object to be accomplished, the situation of the parties, and the relations existing between them. The nature of the duty of the obligor and the character of the obligee must also be regarded as explanatory of the intent."

In Weaver v. Shryock, 6 Serg. & R. (Pa.) 262, 264, the court said:

"It is a fair presumption, in the absence of all evidence to the contrary, that every man understands what he is doing, and that those obligors understood the long and well-established difference between a joint and a joint and several obligation. But this presumption may be rebutted by circumstances; and one circumstance on which courts of equity have laid great stress, is, that the money for which the bond was given, was borrowed by, or came to the use of, both the obligors; in such case, the very act of borrowing does, in itself, amount to a contract antecedently to their entering into a bond, that each and both should be bound to pay. When, therefore, the bond is afterwards so drawn as to constitute only a joint obligation, there is a reasonable presumption that, either through fraud, ignorance, or inadvertance, the meaning of the parties has not been carried into effect."

Applying these rules for the construction of the bond, let us look to the surrounding circumstances and object to be attained for the purpose of determining whether or not the obligees are joint or several, and, if several, the extent of their several interests in the bond. Surety companies execute bonds

of this character for a money consideration—a premium—and such premium should be paid in equal parts out of the estate of each of the obligees. The guardian's reports show that the estates of these obligees were kept separate and distinct. Each had his or her own allotment and separate property and the estates were and are entirely separate and distinct. Neither one of the obligees had any interest in the estate and property of the other obligees, and 9 C. J., p. 33, says that:

"A bond given to two or more obligees may be given to them jointly or severally, but not jointly and severally. The general rule is that if the interest of the obligees is joint, the bond will be deemed to have been given to them jointly; if their interests are several, then severally."

As neither of the obligees had any interest in the estate of the others, and as a misappropriation of one's property in no way affected the others, their interests were several in every sense of that term. The entire penalty can be recovered but once. Now, if one of the obligees can absorb all the penalty, then the co-obligees are divested of a security without their consent and for which each has probably paid his share of the premium. The bond stands as a protection to each of the co-obligees during the entire guardianship term, unless released as provided by statute. Now, by what rule of law, of right, or of construction, can one obligee appropriate to his own separate use and benefit, a security separately owned and relied upon by another, though they may all be jointly named as the obligees in the bond? Their estates being entirely separate, their interests in the bond are equally separate, because one cannot share in a judgment recovered for a shortage in the guardian's funds of the other. Counsel contend that Deegan v. Deegan, 22 Nev. 185, 58 Am. St. Rep. 742, holds that the obligees are joint. A careful examination of that opinion shows that the remarks of the court in regard to the obligees being joint were made in a statement of what the appellants in the case contended, and the court held that if they were joint, the plaintiff could maintain the suit unless it was shown the joint obligees not parties were living. That was a case where one guardian made a bond running to his several wards. It was contended in that case by the appellants that the bond was void because the several wards were joint obligees. and that the bond to be valid should have run to each ward separately. The court overruled that contention, and in holding that the suit could be maintained by one obligee without joining the others, said:

"Although the bond in this case is not in strict conformity to the statute, yet the fact that it was given for the benefit of more than one minor does not vitiate it. The practice in this respect appears to be general and uniform in all courts authorized to take such bonds. The omission of the word "severally" does not weaken the bond, release the sureties, nor, in our opinion, deprive the individual ward from maintaining an action either against the guardian or his sureties. **The nature of the guardian's duties is several, and would require a several inventory, a several accounting, and payment over to the wards, as they severally arrive at full age.**" (Emphasis ours.)

It is also suggested that Hooks v. Evans, 68 Iowa, 54, 25 N. W. 925, holds that the obligees are joint, but the court simply held that, all the obligees not being parties to the suit, no judgment could be rendered for more than one-fourth of the penalty, there being four wards. Clearly the Iowa Supreme Court did not commit itself to the holding that the wards were joint obligees under the bond—quite to the contrary. The only thing the court said on the question is this:

"One question remains to be determined, and that is as to the amount for which these sureties are liable in this case. The judgment against the guardian was for $736.12. The penalty of the bond is $600. The judgment against the sureties might be for the amount of the penalty of the bond, but for the fact which remains to be stated, that Evans was appointed guardian, not only for the plaintiff, but for three others, and the bond in question was given for their benefit, and was the only one given for the four. **It is manifest that the aggregate liability of the sureties to the four wards could not exceed $600.** The other three wards are not made parties, and without them no judgment can be rendered by which their rights can be impaired. It follows that the court below should have rendered judgment against the sureties for $150, and only that." (Emphasis ours.)

But the question has been squarely passed upon in two cases by the Wyoming Supreme Court. In United States Fidelity & Guaranty Co. v. Parker, 121 Pac. 531, 536, the Wyoming Supreme Court held that a guardian bond running to several wards did not make them joint obligees, but several obligees, and, among other things, said:

"The bond was executed upon a consideration by a company organized to make such bonds for profit, and the company does not stand in the position of a surety for accommodation. 32 Cyc. 306.

"It is here urged that each of the wards or joint obligees is a necessary party to an action on the bond. * * * It may be said, however, that the intention of the obligor and the surety to secure each of the wards in

his or her individual rights and to turn over to each the property to which he or she was entitled upon attaining majority contemplated, if necessary, a several action on the bond by each of the obligees. Section 7760, R. C. Mont. **Such being clearly the intention, the bond will be construed so as to preserve the rights of the obligees severally.** The bond was not void."

In that case the bond, carrying a penalty of $4,800, was executed by the guardian and his surety for the protection of the guardian's four minor wards. In that suit one of the wards recovered one-fourth of the bond, and in United States Fidelity & Guaranty Co. v. Nash (Wyo.) 121 Pac. 541, another one of the wards commenced an action to recover against the guardian and his surety a shortage of $2,969.80. The trial court gave judgment for that amount, but the Supreme Court reversed it, holding that the bond was several and that neither one of the four obligees could recover more than one-fourth of the penalty. It is contended by the plaintiff (1) that the obligees are not joint, (2) that the obligees are several, and (3) that, being several, the plaintiff can recover the entire penalty on the bond. The first two contentions are correct, but the third is wholly without foundation. If one obligee can recover the entire penalty, then a judgment in his favor for the maximum operates to destroy the security of the co-obligees and deprives them of the protection they have paid for against loss. To illustrate—a suit by one obligee is prosecuted to final judgment for the maximum penalty; the co-obligees have no interest in that judgment; their protection against loss is destroyed and they are thus stripped of a right for which they receive nothing in return. As said in Hooks v. Evans, 68 Iowa, 52, 25 N. W. 925, supra, in regard to a guardian's single general bond made for four wards, "it is manifest that the aggregate liability of the sureties to the four wards could not exceed $600," that being the amount of the penalty named in the bond. That being true, the court held the plaintiff in that case could only recover from the surety $150.

The effect of plaintiff's contention is that the obligees are joint **and** several. We know of no text-writer or adjudicated case construing a bond or obligation of this character as making the obligees joint and, several, and 9 C. J., p. 38, says:

"A bond given to two or more obligees may be given to them jointly or severally, but **not jointly and severally.**"

If the obligees are joint **and** several, then the authorities are wrong in holding the penalty named in the bond is the maximum, because each could recover $3,300 and then

all jointly recover another $3,300. Such a construction of this bond would do unpardonable violence to the language of the instrument itself. In the absence of express language making the obligees joint and several, it cannot be construed as such. We know of no case holding that each of the obligees under a bond of this character can recover the full penalty. Whereas, United States Fidelity & Guaranty Co. v. Parker, supra; Hooks v. Evans, 68 Iowa, 52, 25 N. W. 925; Trumpler v. Cotton, 109 Cal. 250, 41 Pac. 1033; Edmonds v. Edmonds (Iowa) 35 N. W. 505; United States Fidelity & Guaranty Co. v. Nash, supra, and the same case on rehearing in 124 Pac. 269, expressly hold that the penalty named in the bond is the maximum liability of the sureties, and that neither of the obligees can recover more than their several proportions in the bond. Indeed, a bond or obligation to the obligees jointly **and** severally would be a most unusual and remarkable contract.

We therefore conclude that the maximum liability of the American Surety Company to Everett Bible is the sum of $650, being one-fifth penalty named in the bond. On that sum the plaintiff is entitled to recover interest from the date the guardian was adjudged short in his accounts. The surety's obligation accrued and matured on the date the guardian was adjudged short in his accounts, and it is liable for interest from that date.

5. This brings us to the plaintiff's cross-appeal against the American Surety Company. The plaintiff, as cross-plaintiff in error, did not prepare and serve any case-made, nor file any case-made or transcript of the record in this court with his cross-petition in error, and it is contended that his cross-petition in error must be dismissed. The plaintiff did everything necessary to invoke the jurisdiction of this court to review that part of the judgment adverse to him except prepare and serve a case-made and file the same in this court with his petition in error. The record shows that the cross-petitioner in error filed a motion for new trial on the ground that the court erred in exonerating the American Surety Company from liability on its $500 lease bond executed by the guardian on the 9th day of November, 1903, conditioned to be void if the guardian leased the land of his ward with fidelity and well and faithfully accounted for all moneys, rents, profits, and other things of value received by him under such lease. The record also shows that he gave notice of his intention to appeal to the Supreme Court as required by section 5238, Rev. Laws 1910, as amended by the act of the Legislature ap-

proved March 23, 1917. Within the six months allowed for commencing proceedings in error plaintiff filed his cross-petition in error, assigning as error the action of the trial court in exonerating the company from liability on said $500 bond. His cross-petition in error will not be dismissed because he failed to prepare and serve a case-made, it appearing that a true and correct case-made was settled and signed in due time at the instance of the American Surety Company and filed in this court. The making, serving, and filing of a separate case-made would have uselessly encumbered the record. Rules of procedure are not promulgated to defeat justice or to render its administration expensive, hazardous, and inconvenient, but to reasonably aid in protecting and enforcing rights. The appeal statutes in this state were for a number of years in force in Kansas, and section 5238, Rev. Laws 1910, as amended by act approved March 23, 1917, did not abrogate the right to file a cross-petition in error. The Kansas Supreme Court held in a number of cases that the filing of a cross-petition in error, attached to a transcript or case-made previously filed in the Supreme Court to reverse or modify the judgment or final order of the trial court, is the commencement of a proceeding in error in the Supreme Court at the instance of the party filing the same. Leavenworth Lodge, etc., v. Byers (Kan.) 38 Pac. 261; Wheeler v. Caldwell, 68 Kan. 776, 75 Pac. 1031; Burdick's New Trials and Appeals, Kan.-Okla., sec. 177. The right to file a cross-petition in error was recognized by this court in Wails v. Farrington, 27 Okla. 754, 116 Pac. 428. It is admitted by counsel for the American Surety Company that the evidence does not show whether or not any of the funds misappropriated by the guardian were derived from the lease. The burden of proof was on the surety to show that none of the funds derived from the lease constituted any part of the shortage in the guardian's accounts. Knox v. Cruel, 75 Okla. 274, 183 Pac. 427; American Bonding & Trust Co. v. Coons, 66 Okla. 34, 166 Pac. 887. That part of the judgment is reversed. It also appears from the record in this case that the American Surety Company filed a counterclaim for $78 premium on the general guardianship bond, and that the guardian stipulated that the $78 should be offset against any judgment in his favor. That stipulation was evidently founded on a mistaken view of the legal rights of the infant, and is not binding on the court. The guardian cannot irrevocably waive a legal right of his ward. That was error, inasmuch as the bond was made for the benefit of five wards and consequently Everett Bible, and the plaintiff, as his representative, is only chargeable with one-fifth

of the premiums. The court is not bound by that stipulation, and this court in a proceeding in error may notice a manifest error adverse to the interest of the minor. Kempner v. Dooley, 60 Ark. 524; Branch v. Mitchell, 24 Ark. 431; 10 Ency. Pl. & Pr., p. 589; Rodgers on Domestic Relations, sec. 715; Burt v. McBain, 29 Mich. 261. The trial court made separate findings of fact and conclusions of law, and under section 5258, Rev. Laws 1910, this court has the power to reverse the judgment in whole or in part and remand the case with directions to the trial court to enter the proper judgment. Therefore, the judgment of the trial court against the Title Guaranty & Surety Company is affirmed; the judgment against the American Surety Company is modified; and the case remanded to the trial court with directions to recast the judgment to conform to this decision and so as to adjudge the American Surety Company liable proportionally for $1,150, with interest, on which it may have a deduction of one-fifth of the unpaid premiums due it on the general guardian bond executed by it as surety.

RAINEY, C. J., HARRISON, V. C. J., and PITCHFORD, JOHNSON, and McNEILL, JJ., concur.

KANE, HIGGINS, and BAILEY, JJ., also concur, except in that part of the opinion holding the order of the county court purporting to release the Title Guaranty & Surety Company as surety on the guardian bond is void. They are of the opinion that the said surety was released.