HARTFORD ACCIDENT. & INDEMNITY CO. v. HEMBREE et al.

No. 30694.   Oct. 19, 1943

Rehearing Denied Nov. 9, 1943.

*142 P. 2d 618.*

Rittenhouse, Webster, Hanson & Rittenhouse and S. G. Evans, all of Oklahoma City, for plaintiff in error.

Paul W. Updegraff, of Norman, for defendants in error.

BAYLESS, J. The appeal from the district court of Cleveland county by Hartford Accident & Indemnity Company, a corporation, presents issues relating to the validity of a judgment in favor of A. W. Hembree et al., guardians, setting aside an earlier order discharging Company as surety on the bond of a former guardian and holding Company liable for certain acts of misconduct on the part of the guardian after that order of discharge.

In September, 1933, Tom C. Waldrep was appointed guardian of the minors and, as directed by the order of appointment, gave bond for the penal sums of $120,000, and Company was surety. This bond was approved September 20, 1933, and became effective.

July 17, 1934, Company filed an application to be released as such surety and to be relieved of any further responsibility for the acts of the guardian. Notice in the form of a citation was given the guardian, and hearing set for August 20, 1934, but at that time hearing was set for August 27th. No notice was required by the county judge to be given anyone else interested in the estate.

August 27, 1934, at the hearing, an order was made (1) granting the application and discharging the surety; (2) setting the penal sum for the substitute bond and directing one to be given; (3) approving the account filed and approving a check of the physical assets of the estate; (4) approving the new bond and sureties thereon, and (5) canceling the bond on which company was surety. This brief paragraph will be elaborated on later in the discussion of the issues.

In January, 1935, the guardianship proceedings were transferred to Cleveland county.

In July, 1940, Tom C. Waldrep was discharged as guardian. Exceptions were taken to his final account. At the same time pleadings were filed in the proceedings seeking to set aside the previous order discharging Company as surety, and seeking to hold Company responsible as surety on Waldrep's bond. At the hearing Waldrep was surcharged more than $67,000, and the order of August 27, 1934, releasing Company as surety was vacated and Company held liable to respond for Waldrep's defalcations.

An appeal to the district court was prosecuted by Company, and following a trial de novo, a similar order was entered wherein Waldrep was surcharged $64,238.35, and Company held responsible therefor. Company appeals, and guardians cross-appeal asserting that additional items should have been surcharged.

Company presents two assignments of error and subdivides the second assignment into three parts. Guardians have answered these propositions in the order presented, and have presented certain argument relating to the matters involved in their cross-petition in error. The purport of Company's proposition "A" is that the order of August 27, 1934, discharging it as surety on the guardian's bond was a valid order, and the purport of its proposition "B" is that such a valid final order can only be vacated upon the grounds specified by statute (12 O. S. 1941 §§ 1031 and 1033), and if the ground to vacate be that of fraud, the fraud must be extrinsic as differentiated from intrinsic fraud.

The parties differ first about the nature of the order of August 27, 1934, and

the matters that properly could have been and actually were covered thereby. This arises from their views about which statutes governed the proceedings whereunder the order of August 27, 1934, was entered. Company insists that 58 O. S. 1941 §§ 185, 186, and 187 govern, that the steps which it took to secure its release as surety on the guardian's bond and the procedure followed and authority exercised by the county court were in conformity therewith, and the order of August 27, 1934, is in substantial compliance therewith. Guardians insist that the sections just cited are not applicable, that 58 O. S. 1941 §§ 552 and 779 are the governing statutes, and that the proceedings taken by company disclose that these were the statutes company had in mind but failed to conform thereto.

Upon studying the respective statutes cited by the parties, it is to be observed that the three sections cited and relied on by Company fall under that part of our Code dealing with probate procedure and particularly touching upon matters appertaining to executors and administrators, whereas the section cited and relied on by guardians relates to matters appertaining to guardians. We discuss hereafter the effect of 58 O. S. 1941 §§ 833 and 893.

Section 185, supra, appears to have been enacted by chapter 63, S. L. 1913, as an amendment to section 6278, Revised Laws 1910. A study of section 6278, Revised Laws 1910, and the accompanying sections indicates that section 6264 requires the giving of a bond by an administrator or an executor; that section 6272 provides that any person interested in the estate may move for additional surety on the bond of an executor or administrator; that section 6273 provides for the procedure to be followed if anyone interested complains and the county judge thinks an investigation is required; 6274 authorizes the taking of evidence and the making of an order; and 6277 authorizes the county judge upon his own initiative to inquire into the sufficiency of the bond or

surety of an executor or an administrator. Section 6278, supra, read prior to the amendment in 1913 exactly as it now reads, except for the word guardian. The amendment of section 6278, supra, to include guardians as well as executors and administrators is the sole change made by the amendment of 1913. It is to be observed that section 6279, Revised Laws 1910, is identical with section 186, supra, and section 6280, Revised Laws 1910, is identical to 187, supra. Thus the only change made in these sections relating to executors and administrators was the amendment to section 185, supra, by way of authorizing the surety of the guardian, as the sureties of executors and administrators theretofore had been authorized, to initiate proceedings for his own release. Up to that time anyone interested in the estate or the county judge or the executor or administrator might move to strengthen a bond or release a surety therefrom. If any doubt existed up to 1913 about the privilege of a surety on a guardian's bond to also apply for discharge, it had been resolved in favor of the privilege. We observe from American B. & Tr. Co. v. Coons, 66 Okla. 34, 166 P. 887, and Title G. & S. Co. v. Foster, 84 Okla. 291, 203 P. 231, that applications by sureties on guardian's bonds for discharge had been entertained and acted on. The doubt concerning the applicability of the sections of R. L. 1910 corresponding to sections 185, 186, and 187, supra, to guardianship proceedings was noticed in Aetna Accident & Liability Co. v. Langley, 68 Okla. 283, 174 P. 1046, and settled on the basis of section 6565, R. L. 1910 (58 O. S. 1941 § 833), making applicable to guardianship proceedings certain statutory procedures provided for executors and administrators. Perhaps reference to section 6585, R. L. 1910 (58 O. S. 1941 § 893), would have been more appropriate. That section made all provisions of the statutes relating to estates of decedents applicable to estates of minors.

In Aetna v. Langley, 68 Okla. 283, 174 P. 1046, it is said:

"The only statute specifically confer-

ring power to release sureties on a guardian's bond is section 6580, R. L. 1910, . . . . . . . . The power of the court under those sections (6278 et seq., R. L. 1910) to release sureties is no greater than that under section 6580, supra."

Thus it was settled prior to the amendment of 1913 that the power of the county court to release sureties on guardian's bonds was governed by section 6580, R. L. 1910, and not by sections 6278 et seq., R. L. 1910. A study of section 6580, supra, indicates that the Legislature did not surround it with statutory provisions with respect to the manner of the exercise of the power. From this we are of the opinion that prior to the amendment of 1913, when the surety on a guardian's bond desired to initiate proceedings looking to his release from further liability under section 6580, supra, reference might be had under the authority of section 6565, supra, to sections 6278 et seq., supra, for the proper steps to initiate the proceeding.

However, when attention is again paid to the amendment of 1913, and it is seen that the Legislature did not attempt to amend any of the sections accompanying section 6278, supra, but left them as they were, that is, applicable to executors and administrators directly and applicable to guardians only when reference thereto was necessary, we are led to hold that the narrow amendment of 1913 did no more than settle by legislative fiat the theretofore doubtful privilege of a surety on a guardian's bond to apply for discharge therefrom. If by implication the procedure provided for in sections 186 and 187 (which were not amended) was thereby made applicable to proceedings to release sureties on guardian's bonds, such statutes were only pari materia with section 779, and thereafter all of such statutes were required to be construed together. Thus while section 185 prescribes the notice to be given to the guardian in such cases, the provisions of section 779 prescribe the notice to be given to other interested parties and the requisite finding of fact to be made, and the provisions of both statutes must be followed.

Guardians argue that Company recognized this to be the rule governing its proceedings that led up to the order of August 27, 1934. They point to the matters called to the attention of the county court in the application or petition to be released and attempted to be covered in said order as support for this argument. They point out that there is no provision under sections 185, 186, and 187, supra, for an accounting on the part of an executor or administrator as a part of the process of substituting sureties; whereas, under section 779, supra, an accounting is necessarily comprehended, and under section 552, supra, the procedure to be followed in an accounting is outlined. They point out further that there was some sort of an accounting made by the guardian, and they particularly point out that the order of August 27, 1934, purports to release Company as surety from liability for future acts and also purports to release it from liability for past acts of the guardian on the theory that the guardian had fully accounted and shown himself free of any past fault.

Company counters this argument by saying that it conducted its proceedings under the authority of sections 185, 186, and 187, supra, and not under section 552 or 779, supra, which it insists are not applicable, that it did not feel that an accounting was necessary but only proper at such a stage of the guardianship; and although the order of August 27, 1934, purports to release it from liability for past acts of the guardian, it nevertheless recognizes and concedes that the order is to that extent in excess of the power of the county court and, therefore, ineffectual. It says it now contends only that the order of August 27, 1934, released it as surety on the bond of Waldrep from any further liability or responsibiilty for the acts or conduct of Waldrep after August 27, 1934, and is a valid order for that purpose under sections 185, 186, and 187, supra.

This resolves the issue about the or-

der of August 27, 1934, into these points: (1) Company insists the order is valid and served to discharge it as surety on guardian's bond as of that date, and since then it has had no responsibility, and (2) guardians' insistence that the order was void and did not serve to discharge Company and it has remained liable thereafter until Waldrep was discharged in 1940 to respond to the wards for breaches of duty by the guardian that resulted in loss to the wards.

Company's other proposition, that the order, being valid and final, is not subject to attack except in a statutory manner and according to our decisions, is postponed until the status of the order of August 27, 1934, is determined. If the order is found to be valid, or if it is found to be invalid for some of the reasons advanced by guardians, there is no occasion to consider that proposition at all. In some respects such an issue as to its vulnerability to attack should be considered first, but in this case each of the parties seems to relegate it to secondary position, and as they have arranged their argument on the issues in the manner adopted, we adopt a similar method of treatment.

Is the order of August 27, 1934, valid or void?

Guardians say the order is void because no notice was served as required by 58 O.S. 1941 § 552, which provides, in effect, (1) that when any account other than a final account is rendered for settlement, (2) the county judge must set a day for hearing it, (3) the county judge must cause notice to be posted giving certain detailed information, and (4) may order additional notice given. The fact stands without dispute that no such posted notice of hearing the account was required or given. The record does not disclose that an order was made setting a time for hearing the account. The county judge, acting on the petition of company, issued a citation. The petition contained this language, in part:

"issue a citation to Tom C. Waldrep,

guardian of Una, Hembree and Dora Hembree, minors, to be served personally upon him, requiring him to appear upon some date certain and render to this Court an accounting duly checked and verified by a certified public accountant of his acts during the pendency of the bond of your petitioner and to further render to the Court a physical check of the assets of said guardianship . . . ."

The citation reads, in part:

". . . render to this Court an account of your acts in the administration of the above entitled guardianship . . . ."

The record does not disclose that any notice was served or given to anyone else.

Guardians insist that section 779, supra, authorizes a county judge to discharge the existing sureties from further liability only "after due notice given as he may direct, when it shall appear that no injury can result therefrom to those interested in the said estate;" and relying on Aetna v. Langley, supra, and the language therein, urge that the proceedings shown in this record fall far short of what the statute required and comprehended.

It seems reasonable to us to say that before as vital a step as the release of satisfactory surety and the substitution of new surety is accomplished, due care should be used. As pointed out in the Aetna decision, the power to do this is not inherent in probate courts. It is not inherent because the act of a surety in assuming to make bond for a guardian constitutes a contract between the surety and the ward. It is not a contract for the protection of the court. We have said that the power to interfere with this contract exists in our county courts only by statute, and that the provisions of such statute are mandatory and must be complied with strictly.

In this guardianship the county court was bound to observe the statutory provisions and requirements in discharging Company as surety on the acceptance of other or substituted surety. In Title G. & S. Co. v. Foster, supra, we held

there could not be a gap between the old bond and the new one, that is to say, the discharge of the old surety and their release from further liability becomes effectual only upon the taking effect of a new bond that is legal and binding in all respects. The opinion in that case clearly holds that a surety who relies upon an order of discharge can only do so where such an order is valid. If the order is void, it does not serve as a release and the surety's responsibility continues. In that case it was assumed that proper steps had been taken to invoke the court's jurisdiction to act, and the invalidity of the order of discharge was based on the matters contained in the order. What was said in that decision relating to the subject matter included in the order supports to an extent the contention of Company that details in county court orders relating to the amount and sufficiency of the substituted bond and the satisfactory character of the sureties are matters strictly within the power of the county courts. Yet, it is not authority for the county courts to act without jurisdiction, or without proper notice, or without observance of the statutory commands. It is said in that decision: There are three elements whose presence upon inspection of the judgment roll is indispensable to the validity of an order, and if upon examination any one of the three is absent, the order is "void on the face of the record." It is also said, based on Miller v. Mills, 32 Okla. 388, 122 P. 671:

". . . Where a party relies upon a judgment, the opposite party may always inquire into the jurisdiction of the court to render it."

Guardians attack the jurisdiction of the county court to make the order of August 27, 1934, because of the absence of two of the three indispensable elements of jurisdiction. They are: (1) There was no jurisdiction of all of the persons interested in the estate because no order was made setting the petition for release for hearing, and no order was made directing the giving of notice, and no notice was given to anyone in-terested except the guardian; and (2) there was no jurisdiction to make the particular order because no hearing was held to determine whether "no injury can result therefrom to those interested in the estate," and no consideration was given to that essential issue, and no finding was made thereon, and there is a fatal variance between the recitals of the order respecting the substituted bond and the substituted bond.

We are of the opinion the record bears out the contention of Company that it proceeded wholly under sections 185, 186, and 187, supra, and that the record discloses that it did not consider sections 552 and 779, supra, applicable, and, therefore, made no effort to comply therewith. We understand Company's position to rest wholly on the applicability of sections 185, 186, and 187, supra.

From what we have said to this point it is obvious that Company's reliance on these sections and its ignoring sections 552 and 779 are fatal to the validity of the order of August 27, 1934, and that such fatality is apparent on the face of the record. The order was void, and its void character appeared on the judgment roll.

Waldrep was guardian of both the person and estate of the minors, according to the recitals of Company's bond, but it stands uncontradicted that other persons had the custody and care of the minors at the time of the proceedings in 1934. Neither the minors, for whose benefit the security was given by Company (Aetna v. Langley, supra), nor those persons having the personal custody of the minors, nor any of minors' adult brothers or sisters, were given notice of the hearing of Company's application to be discharged as surety. We are of the opinion that notice, as that term is used in legal proceedings, meaning due process of law, is a prerequisite to the power of the county court. In speaking of the power of probate courts in Oregon to discharge or release sureties on probate bonds, it is said in Bellinger v. Thompson, 26 Ore. 320, 37 P.

714, 720 (cited by us in Aetna v. Langley, supra):

"In many states the statutes provide that a surety may, on his own petition, and with notice to interested parties, obtain an order, and be discharged from further liability on an executor's or administrator's bond, but we have no such statute in this state. The only method provided by which a surety can be discharged or relieved is found in sections 1096, 1097, of the Code, and it is not pretended or claimed that the proceedings upon which the order in this case was made were in conformity with the provisions of these sections. . . . after the bond has been given the power of the county court over it ceases, and the heirs, legatees or creditors for whose security it is given have a vested interest therein, of which they can only be deprived by some proceeding known to the law. . . ."

In the case of In re Deming's Guardianship, 192 Wash. 190, 73 P. 2d 764, among other issues discussed, was that of the validity of an order reducing the penal sum of an operative guardian's bond. The Supreme Court of Washington said:

"Appellant argues that the court's power to reduce a guardian's bond was impliedly read into the bond, and became a part of the surety's contract. This is true, but in the proceedings leading up to the reduction of a bond already operative, and in connection with which obligations have accrued, the law must be carefully observed before the amount of the penalty may be reduced. Appellant also argues that, because the statute contains no direct provision for notice to a ward of a proposed reduction in the guardian's bond, notice of such a step is no more necessary than notice to the ward of the fixing of the amount of the bond in the first instance."

Then follows a recital of the argument based on the hypothesis that no complaint could have been made by a ward if the penal sum had been fixed too low in the first instance, and this was conceded. But, said the court:

"When, however, a guardian's bond has once been filed and become effective, an entirely different question is presented. Rights and obligations have then arisen between the parties to the pending proceedings and such obligations may be established, altered or satisfied only in the legal manner."

It appears that the reduced bond was regarded as in effect for some time. Liability then arose, and surety paid the reduced penal sum and was released. Surety relied upon the first order as evidence of a valid reduction of its penal liability, and upon the last order as a valid order of release. This was rejected in this language:

"Certain vested rights against their guardian and his surety had accrued in favor of the wards. No rights could be released by any such state of facts as here appears."

It was expressly noted in the decision in that case that the order was ex parte insofar as the minors were concerned, no notice being given them, and no guardian ad litem appointed to represent their interests in the proceedings between their guardian and the surety on the guardian's bond for their protection, and ". . . the wards, until the trial now before us for review, did not have their day in court as to the validity of this order."

With respect to the second ground of invalidity urged against the order of August 27, 1934, that it did not show a finding that no injury was likely to occur to those interested in the estate, we do not have to decide in this appeal whether an order releasing a surety and substituting a new bond and surety must contain a finding that no injury is likely to occur. It is sufficient to sustain this contention to simply say that such an issue was not considered. Company was proceeding under other sections of the statute than 779, supra, and those statutes made no provision for such a finding. The lack of power to release a surety except by strict and mandatory compliance with the applicable statute was stated in Aetna v. Langley, supra, in this language:

"The duty of the court to take security having been so carefully regulated

by statute, it would be at least singular if the court had the power independently of statute to discharge the bond and release the surety from liability thereon upon any terms other than a compliance with the conditions thereof. Counsel have not cited, and we have not found any decision holding that such power exists. On the contrary, it is generally held that the court having jurisdiction of the appointment of guardians, executors and administrators and settlement of their accounts has not the inherent power to discharge such bonds or release the sureties from liability thereon (citing authorities, including: Bellinger v. Thompson, cited earlier in this opinion by us); but such power must be conferred by statute, and where there is such a statute, its provisions are mandatory and strict compliance therewith is essential to work a release of the surety."

In that opinion this court went on to point out that section 6580, R. L. 1910, now 58 O. S. 1941 § 779, is the only statute conferring power on the county courts to release the surety on a guardian's bond.

Before closing the discussion on this aspect of the order of August 27, 1934, it is interesting to note that in the order it is found simply, ". . . surety on the bond of the said guardian, desires to be released from liability upon said bond, . . . ."

This statement, coupled with the statement that a new bond had been tendered, is the basis for the exoneration of company as surety. The desire of a surety to be released may be the initiating factor of such a proceeding, but the desire is not controlling. The desire can be granted only if the court considers whether injury is likely to occur to the wards and decides that in the negative.

We come now to the last feature of the guardians' contention that two jurisdictional essentials were absent from the record, and consider whether the order releasing Company failed to become effective because of the failure to give a new bond.

It was pointed out in Aetna v. Langley, supra, ". . . it is a grant of power to substitute a new bond for an existing one, . . . ."

The order of August 27, 1934, recites: ". . . and the said guardian having tendered to the court a new bond executed by himself as principal and Chas. Ross and John G. Hall and J. A. Nolen as sureties."

There is considerable dispute between the parties as to whether this recital is true. The record contains this bond, and we observe that it is signed by Waldrep, as principal, and Jno. G. Hall and J. A. Nolen, sureties. Chas. Ross did not sign as a surety as found in the order and the county judge who inserted Ross' name said he did not know how it got in the bond. The bond bears this endorsement:

"Filed and approved this 27th day of August, 1934. W. M. Haight, County Judge, (seal)."

It also bears this endorsement:

"Filed in the County Court January 10, 1935, Pottawatomie County, Oklahoma."

The then county judge states that the names of the sureties were inserted in the order of August 27, 1934, in his handwriting. John G. Hall testified that his signatures appearing on the bond were genuine, but were not placed there by him in August, 1934, but sometime in November, 1934. His evidence as to where and when he signed the bond is detailed. In passing it is significant to note that Hall was indebted to the minors on a note and mortgage for more than $11,000, according to the report made by Waldrep to the county judge, and yet was accepted as a surety on the bond. We think there is sufficient evidence in the record to justify a finding that no new bond was given as directed or found, and that the instrument that was accepted and approved and filed on two separate occasions did not serve as a substitute for the bond on which Company was surety. Therefore, the order of August 27, 1934, did not serve to re-

lease Company as surety on the bond of Tom C. Waldrep, guardian of Una and Dora Hembree, minors. During this interval of time, Waldrep also filed a bond executed by Angelus Indemnity Company. We find no authority for this, and his purpose for so doing is obscure.

As pointed out in Title G. & S. Co. v. Foster, supra, such an order that appears on the face of the judgment roll to be deficient in one or more of the indispensable jurisdiction essentials is void, and being void, may be attacked anywhere, and any time it is offered and intended to be used as a valid order or judgment. In this view of the case it is unnecessary to discuss the proposition raised by Company respecting the manner of the attack made on the order.

Company presents certain assignments of error concerning the items of surcharge in the accounting. Guardians make some answer to this, and in turn insist in their brief on the cross-petition in error that other items should have been surcharged. It will be necessary to discuss some of these items in detail, but others may be classified and disposed of in groups.

We consider first the items surcharged. One of these charges is for $42,695.94, and covers the period from September 20, 1933, to August 20, 1934, and consists of five separate items. On three items of this charge there is no separate argument of fact, or at least we can identify none under the arrangement adopted by Company in the discussion of the charge. As to the item of $23,050 for fictitious mortgage loans and the item of $15,750, fictitious municipal bond investments, two arguments are made. The first argument also covers the three items just mentioned. These arguments are: (a) The order of August 27, 1934, approved the account rendered at that time that included all of these items, and such approval is binding here; and (b) the evidence introduced then and now is sufficient to overcome guardian's evidence at this hearing. After studying the argument made under (a) and the argument made on the legal issue previously discussed wherein Company conceded that the order of August 27, 1934, did not release it, we are unable to determine whether the two arguments conflict. In other words, if Company, for the purpose of aiding the determination of the earlier issue, admitted that the order did not release it for defalcations prior to its date, it ought not now be heard to say that such order was binding in its approval of these items. If we allow these two arguments to not infringe each other, we must hold nevertheless that the order of August 27, 1934, did not operate to approve these items. There was no effort made to give notice of a hearing of the account, as provided by 58 O. S. 1941 § 552. We think the hearing that culminated in the order of August 27, 1934, was held with the intention that section 185 et seq., supra, governed, and no effort was made to have a statutory hearing on the account. As to argument (b), relating to the weight of the evidence, we think the finding of the court with respect to the items that make up this total is supported by the weight of the evidence.

Attention is next directed to certain charges covered by findings of fact 2 and 3. Several of these are fees paid by Waldrep, guardian, to himself for acting as attorney for himself as guardian. It is argued there are court orders of approval for virtually all of these. We do not so find. In some instances orders are not mentioned in the testimony, in other instances Waldrep said he was under the impression there were orders, and in other instances he said there were orders. None are in evidence. The disallowance is justified. Other items in this group are not evidenced by vouchers, some being too large to be within 58 O. S. 1941 § 551, and others not. Some are small enough to be within it, but no effort was made to establish them in the statutory manner. There are many such items throughout the account, and we are of the opinion the trial court reasonably observed the statute, supra, with respect to all of these items when there were no vouch-

ers. It is argued that in our. decision in Holder v. Holder, 187 Okla. 45, 100 P. 2d 857, we relaxed the strict meaning of section 551. We did not. We held simply that checks properly endorsed and canceled that show they were for legitimate expenses are equivalent to vouchers. In some instances, it appears there were checks before the trial court, bearing endorsements, and duly canceled as paid through the bank, that show on their face they are for legitimate expenses, and are also supported by the other evidence. They should have been allowed. They are:

"T. D. Adams Roof 1921 N. Market, $57.19"; "Earl Guild for insurance $49.00"; "George K. Hunter for insurance $25.00."

The trial court seems to have disallowed all payments made by Waldrep to himself for compensation as guardian and as attorney's fees for legal services to himself as guardian. Our attention is called to this, but no argument is made, and we are of the opinion the disallowance of these items is proper.

The guardian claimed to have paid directly to the minors about $3,300, and supported some of the payments with checks and others not. As pointed out in Pruitt v. Pilgreen, 178 Okla. 608, 64 P. 2d 263, if a guardian has let the ward have money, in all fairness the guardian should have credit therefor. But, the very nature of the relationship between these parties required care and caution on the part of the guardian. He should have had receipts or produced some proof other than his bare word as to those items the trial court disallowed. As to this item the argument made by guardians in support of the contention on cross-appeal that none of this amount should have been allowed Waldrep does much to offset Company's complaint.

In connection with many of the items included in the $42,695.94 surcharge and the other charges discussed, Waldrep gave testimony helpful to guardians that was contradictory of former reports. Company urges that under Title G. & S. Co. v. Slinker, 35 Okla. 128, 128

P. 696, such testimony was inadmissible. We do, not think that case is authority for this contention. There a suit was being brought against a surety to recover the amount of shortage on a guardian's bond that had already been adjudicated, and it was simply held the guardian's testimony could not be received to contradict what had been adjudged at the hearing. Here the adjudication had never been made, and guardian's testimony is admissible for the purpose of enabling the court to settle the final account even though such testimony may vary from information theretofore given by the guardian to the court in reports.

Company calls attention to certain items of income reported by Waldrep as having been received from real estate and municipal bond investments, and urges that since the trial court found that certain real estate mortgage investments and all of the reported municipal bond investments were fictitious, it is obvious that Waldrep could not have had any income therefrom. It says the total of these reported receipts is $5,-695.25. We have found only $4,593.25 so reported. Of this $2,763.25 is chargeable to the municipal bonds. Waldrep mentioned one item of mortgage interest of $1,825 as being fictitious, but our attention is not directed to any others that are fictitious. He had many other items of mortgage interest that were proper. He had sufficient mortgage investments to have produced more income than was reported. Our consideration of all of these items of income attributable to mortgage interest does not lead to the conclusion that he faithfully reported all such income, and for that reason we are unwilling to allow Company credit for this $1,825. There is the probability that the item of $1,825 may not have been received as reported by the state of Waldrep's accounts and reports, but that does not incline us to hold that this item should be allowed as a credit to Company. As to the items of bond interest income the situation is different. He could not have had such income, and we hold that Company

should have credit on the judgment against it for the sum of $2,763.25, with the interest that is included in the judgment against it. Before we leave this item, we wish to say that we have observed that interest has been allowed as a part of the judgment on the items of municipal bonds from the time such reported investment was found to have not been made, and in this manner the wards obtain an income from the money that ought to have been invested but was embezzled.

In addition to this item and its interest, Company should be credited with the sums of $57.19, $49, and $25, with appropriate deduction for the interest they have borne as a part of the judgment rendered.

We come now to a consideration of the guardians' cross-appeal, and the items mentioned therein which are sought to be charged against Company.

Company insists that guardians are not entitled to present these matters because they did not file a motion for a new trial in the lower court. Guardians point to In re guardianship of Butler, 130 Okla. 241, 266 P. 1106, and other Oklahoma decisions to the effect that matters of this kind are proceedings as differentiated from actions and no motion for new trial is needed.

Guardians have listed three pages of items they insist should be surcharged. We have examined these and have classified them for discussion.

Many of them are small, although their aggregate is substantial. They appear on their face to be for legitimate purposes, and seem to have been allowed on that basis even though they are not supported in some instances by vouchers. In most instances these items are adequately supported. Our consideration of all of the items listed has caused us to single out certain classes or items for separate discussion and treat the others as being justifiably allowed without further specific discussion. Further, we are convinced there is some duplication in the use in the argu-

ment as to some of these items, and our surcharges take care of several such instances.

There are a number of items of payments to Mrs. A. C. Lemons for care and maintenance of the minors. We think Waldrep's showing on these makes at least a prima facie case, and in the absence of contradictory proof of some sort, must be approved.

Then there is the matter of the so-called Ingram property, an asset of the estate of the minors, described as being a stucco house, and received by Waldrep as worth $6,000 and carried on his accounts as of that value. He testified at the hearing the value was only $4,000. His accounts show several receipts of rent at $25 per month, amounting in all to not more than $200 in five years. If there is other rent shown as received from this property, it has not been identified. Waldrep testified that so much delinquent taxes and special assessment liens had accumulated against this property that he did not consider the property worth redeeming, and in 1938 it was foreclosed for these liens. The fact this property was foreclosed for these items lends some support to Waldrep's claim, but there is no showing whether he allowed all or what part of these charges to accumulate. There is nothing in the record on which we can base a just charge to him, and we do not think it proper to hold him responsible for the loss of the entire value of the property. But, between 1933, when he became guardian, and 1938, when this property was taken from the minors, Waldrep expended about $3,000 in repairing and maintaining the property. About $1,500 of this expense is listed in the items sought to be surcharged. The remainder of the $3,000 he says he spent, we do not find listed. Guardians ask that Waldrep be surcharged with the value of the property permitted to be lost, and with the money ill-advisedly spent on the repair and upkeep of the property. There is merit in the contention that Waldrep should have been surcharged something on this item. There is no detailed information showing the

amount of the taxes and assessments, and we do not know for certain whether their total approximated the $4,000 or $6,000 value. In either case, it was gross negligence to spend $3,000 on such a worthless asset, while receiving $200 or so income. The trial court gave Waldrep the benefit of both. We hold Waldrep should be surcharged $3,000 on this item.

Guardians complain of another group of items totaling $2,196 allowed as witness fees and per diem in prosecuting the case of Waldrep, Guardian, v. Merkle. We say that this sum is made up of a group of items, but actually no itemization is made anywhere on the charge. Company makes no explanation in support of it other than to say it is a reasonable figure when the magnitude of that case is considered, and the results obtained are known. This is not sufficient. As lawyers this court know that some expense was attendant thereon, but Waldrep, as guardian, had the absolute and constant duty to keep an accurate account of these expenses, and it simply will not meet the reasonable requirements of the law of guardian and ward to allow such an unexplained lump sum as this. In the absence of a better showing Waldrep must be surcharged this amount.

Guardians complain also of the allowance to Waldrep of full credit for $4,000 paid to attorneys for services in the case of Waldrep v. Merkle. While they object to the payment of any fee, we think this is not tenable as a matter of law or fact. A guardian is allowed to employ an attorney and pay a reasonable fee. The facts in this case show a contract to pay $5,000, and receipts for the payment of $4,000. That is sufficient evidence. But guardians' contention that only one-half of this should be charged against these minors because they owned only one-half of the property and the cause of action is well taken. The contract employs the attorneys and contains an acknowledgment of payment of $3,500, and expressly recites the services are for four of the Hembree minors, including the two in-

volved here. We think Waldrep should have been surcharged $2,000 on this item.

The same is true with respect to two other items of expense in connection with the Waldrep v. Merkle Case: $255 for printing briefs and $540 for expenses on trips to Neosho, Mo. It is pointed out by guardians that although there are no vouchers to support some of the items of these two charges, at the most these minors ought not to pay more than one-half. We agree. Waldrep should be surcharged one-half of these two items.

We direct that the judgment against Company be credited with the items allowed in the discussion of the issues raised by it, as specified above, and that the judgment against it be charged with the items discussed under the cross-petition in error and allowed as additional surcharges, as above specified, and that appropriate interest be allowed.

Company has not asked for annual premiums on the bond subsequent to August 27, 1934, but we regard this as an equity matter and we cannot equitably hold this bond effective from August 27, 1934, until July, 1940, without allowing it the annual cost of the bond that would have been proper items of guardian's expense during that period. We direct the trial court to allow such item as a credit on the judgment against Company, if Company chooses to ask therefor and make proper showing as to amount, with 6% interest.

The proper disposition of many of the items discussed by both sides has been difficult because of the form in which Waldrep made his final account, and the form of the trial court's judgment. Waldrep's final account was no more than a recapitulation of his annual reports, using simply the totals of income, and outgo. There were omissions in each, and much of what was reported was false. The trial court heard testimony and received evidence pro and con. The findings of fact do not include a finding of the total income and outgo, but simply surcharges Waldrep with certain

specified items. Perhaps it was not practicable to do otherwise. Thus we must conclude that all that was reported and mentioned in the trial that was not expressly surcharged was allowed. Many such items allowed were subject to the criticisms leveled by guardians, and many items for which Company claims it should have had credit might not have been allowed or may have been allowed in the general lumping and off-setting that the trial judge must have indulged in rendering his judgment. Except for the changes we have made in the details above set out in credits to Company and additional surcharges against Waldrep, we feel the judgment rendered by the trial court was reasonably in accord with the weight of the evidence.

The judgment of the trial court is modified on the accounting phase as above stated, and affirmed in all other respects and remanded for further proceedings.

CORN, C. J., and RILEY, OSBORN, HURST, and ARNOLD, JJ., concur. GIBSON, V. C. J., and WELCH, J., dissent. DAVISON, J., concurs in part and dissents in part.

------

GIBSON, V. C. J. (dissenting). The majority opinion disapproves procedure and practice under our Probate Code which has been followed in this state for more than 30 years. It renders void innumerable orders of county courts releasing sureties on guardians' bonds. Its conclusion is unsupported by cases from this court or other courts construing statutes similar to our own.

The importance of the questions involved justifies a further discussion of the contentions of the parties and an expression of my reasons for not agreeing with the majority opinion.

The only statutes governing the release of guardians' sureties prior to final settlement in cases of this character are 58 O. S. 1941 §§ 185, 779. Said section 185 appears in the chapter pertaining to executors and administrators, and was formerly section 6278, R. L. 1910. The section was amended in 1913 merely by making the provisions thereof apply to guardians as well as to executors and administrators. It provides in substance that the surety of an executor, administrator, or guardian, if he so desire, may make application by petition to the county judge to be released from responsibility for future acts. The judge is required to issue citation to the executor, administrator, or guardian to appear at a specified time and place to give other security.

Section 186, following, provides that in event new sureties are given to the satisfaction of the judge, he may thereupon make and enter an order releasing the sureties who so applied from any liability "on their bond for any subsequent act, default or misconduct of the executor or administrator."

Guardians are not included in the latter section.

Said section 779 deals wholly with guardians' bonds. It reads as follows:

"The judge of the county court may require a new bond to be given by a guardian whenever he deems it necessary, and may discharge the existing sureties from further liability, after due notice given as he may direct, when it shall appear that no injury can result therefrom to those interested in the estate."

Other than the citation to the guardian, the court ordered no notice to anyone.

Plaintiffs say that section 779, applying only to sureties on guardians' bonds, is the exclusive remedy in cases of this character, and that the procedure therein provided must be strictly followed in order to insure the validity of the order of release. Aetna Accident & Liability Co. v. Langley, 68 Okla. 283, 174 P. 1046. It is urged that said section 779 made it the mandatory duty of the court to notify all parties interested in the estate of the wards, including the wards themselves, their next of kin, and espe-

cially certain designated parties who had been made guardians of the persons of said wards by order of court. The reasoning employed in arriving at that conclusion is that without notice to such parties the court would be without sufficient information to determine whether no injury would result to those interested in the estate, within the meaning of said section, by releasing the sureties.

And plaintiffs further contend that the defendant, instead of complying with the provisions of section 779 relating to notice, proceeded under section 185, supra, and 58 O. S. 1941 § 552, the latter relating to the settlement of interim accounts of executors and administrators, and made to apply to guardians' accounts by 58 O. S. 1941 § 833.

Said section 833 provides that notice of the settlement of such accounts be given by the judge in a specified manner. And plaintiffs say that since no such notice was given, the order approving the account and the order discharging the surety was a nullity. In support, plaintiffs cite Rice v. Wilson, 129 Mich. 520, 89 N. W. 336; Kaspar v. People, 230 Ill. 342, 82 N. E. 816. Those cases, say plaintiffs, have been followed by this court in Aetna Accident & Liability Co. v. Langley, supra.

The latter argument is apparently based upon the assumption that the approval of the guardian's account after due notice was necessary to the legal discharge of the surety.

But the above argument is wholly without statutory support. The filing of an account is not made a necessary part of the procedure on substitution of sureties in cases of this character. The court may properly order an accounting as an aid in determining sufficient security to be required. But the statutes do not even suggest an accounting. So far as concerned the release of the surety from liability for subsequent defaults, the accounting was superfluous. I find nothing in the Langley Case, supra, to indicate a contrary view.

Section 185, after the amendment of 1913, neither enlarged nor diminished the duties of the county judge as then existing in the matter of releasing sureties on guardians' bonds. The amendment merely authorized such sureties to petition the court for release and thus to invoke the court's powers. Up to that time such sureties were without specific authorization to petition for release. However, that right had been recognized by this court. Langley Case, supra.

It is true that section 185 provided that citation be served on the guardian; but section 779 contains substantially the same requirement. It clearly contemplates notice to the guardian to appear and make a new bond in lieu of the old. Where the county court's jurisdiction is properly invoked on petition to discharge sureties on a guardian's bond, the release is conditioned upon the substitution of a new bond. The amount of the new bond and the sufficiency of the sureties are matters for the court's determination, and in the absence of fraud, its decision and order substituting bonds and releasing the surety is conclusive and binding. Title Guaranty & Surety Co. v. Foster, 84 Okla. 291, 203 P. 231.

In the instant case, if the county court's jurisdiction was properly invoked, and plaintiffs' charge of fraud was not established, the order releasing defendant as surety was valid and binding.

A proper petition was filed and citation issued. The guardian responded and made a new bond. The bond was approved by the court. Ordinarily, that would complete the proceedings necessary to the issuance of the order of release. However, I do not intend to say that the court on its own motion might not require a new bond and release the old one.

The question then remaining is whether the notice ordered and given was sufficient to give the court jurisdiction to act. If the notice satisfied the requirements of sections 185 and 779, it was sufficient.

The issuance of the citation constituted literal compliance with section 185.

Under section 779 the court may accept the new bond and release the old "after due notice given as he may direct, when it shall appear that no injury can result therefrom to those interested in the estate." The court directed that due notice be given to the guardian. No other notice was ordered or given. The service of notice as directed by the court was a sufficient compliance with the statute. Said section 779 does not define the character of notice nor designate the parties upon whom it shall be served. Said section leaves that matter wholly to the discretion of the court. The statute does not require notice to persons who might be interested in the estate of the wards; the court must determine merely whether any injury might result to such persons. That is a discretionary matter with the court, and the presence of such parties is not necessary to the exercise of that discretion.

I am aware of no reason why the parties interested in the ward's estate are more entitled as a matter of personal right to notice of hearing on petition to substitute bonds than they are to notice of the court's impending action in approving the original guardian's bond at the inception of the guardianship proceedings. In the latter instance they are entitled to no notice at all either by personal right or statutory requirement. And, in the instant case, the statute requires no notice upon them.

The judge may discharge the sureties "after due notice given as he may direct." The statute does not even indicate the parties to whom notice shall be given. Section 779, supra. It may be that some sort of notice would be necessary; and, based upon that very assumption, the common practice was to notify only the guardian. But the uncertainty as to notice no longer existed after the amendment of 1913 when citation to the guardian became the only prescribed notice.

It has been said that wards acquire a vested interest in the bonds of their guardians (Langley Case, supra); and so they may, but that right may be abated or divested by the intervening action of the court so far as it relates to obligations yet to accrue; and that is a matter lying within the discretion of the county court acting pursuant to statutory authority.

The record as a whole shows that the county court acted wholly within its jurisdictional powers at the hearing on the petition to discharge the surety, and that the order of release is valid on its face. That order is supported by every presumption of validity that accompanies the judgments and orders of courts of general jurisdiction, and it has the same force and effect as do the orders, judgments, and decrees of the district courts. 58 O. S. 1941 § 2; Title Guaranty & Surety Co. v. Foster, supra; Calkin v. Wolcott, 182 Okla. 278, 77 P. 2d 96.

Plaintiffs have charged fraud in the procurement of the order of release.

The trial court found that said order showed fraud upon its face for the reasons, first, that it was therein stated that the guardian had tendered a new bond executed by himself as principal and Chas. Ross, John G. Hall, and J. A. Nolen as sureties, and that said bond was approved, when as a matter of fact no such bond was ever tendered, and did not exist.

This conclusion was based on the fact that the new bond as approved was executed by only two of the above-named sureties.

Such circumstances would constitute no indication of fraud, either legal or actual. If a new bond was executed and tendered to the court in good faith, and the same accepted and approved by the court as a substitute for the old bond, the jurisdictional requirement in this respect was fulfilled notwithstanding the recitals in the order of release with respect to the identity of the bond therein purportedly approved.

The record shows that the bond as

presented, filed, and approved was accepted in lieu of the bond of the defendant. There is nothing in the record to indicate fraud on the part of defendant or collusion between the defendant, the guardian, and the court, or any two of them.

Plaintiffs would have us "take judicial knowledge that the courts and judges in Pottawatomie county participated in robbing the Hembree heirs all during the time the case was in that jurisdiction." That is rather a singular suggestion, to say the least.

Plaintiffs believe that the case of Title Guaranty & Surety Co. v. Foster, supra, sustains the contention that no new bond, within the meaning of the statute, was given. In that case the county court accepted a new bond in the sum of $1,-000 for the existing bond of $35,000, and at the same time restricted the guardian in the handling of the estate by ordering that all funds be deposited in a certain bank and to be withdrawn only on express order of the court; and ordering further that the use of all other property of the estate be subject to express order of the court.

On that state of facts this court held that the order releasing the old bond was "void because the court has no jurisdiction to substitute the bank and itself for the guardian bond required by statute." Obviously, the substitution of the bank and the court for a portion of the security is contrary to the statute, especially since neither the bank nor the court would be answerable as a surety to the ward.

Here, the new bond was presented and approved as and for the guardian's bond, without limitation or restriction, and it fulfilled the statutory requirement, unless fraud entered into the proceedings. Foster Case, supra.

The trial court also found that the order of release was void for the reason that fraud was practiced on the county court by the presentation of a new bond that was grossly inadequate.

I find in the record no support for this finding of fraud. In approving the new bond the court should consider the nature, extent, and value of the estate as it exists at the time; former value is of no concern. In the instant case I must presume that the county court properly exercised its discretionary powers when it accepted the new bond and released the old. The amount of the surcharge for items of loss occurring subsequent to the execution of the new bond shows that the amount of the bond was adequate. There is no evidence of a fraudulent arrangement to substitute inadequate sureties from the standpoint of ability to respond in damages.

The trial court further found that the county court participated in the fraud by accepting a bond which was wholly inadequate for the protection of the minors.

Assuming that the bond was inadequate, fraud cannot be founded upon that fact alone. There is nothing in the record to support this finding. The fact that this estate may have been grossly mismanaged, and unlawfully dissipated, as plaintiffs say it was, does not warrant a conclusion that every act of the guardian and the court was collusive and fraudulent.

We have held many times, and the statutes provide, that sureties are entitled to be released from further liability in such cases. And in obtaining such release, fraud, as in every case, is never presumed. Mere suspicion of fraud, though justified by other and separate past performances, is insufficient to support a finding of fraud.

I am of the opinion that the trial court erred in setting aside the order of release.

On accounting the trial court surcharged the guardian with items aggregating the sum of $42,695.94 and representing defalcations occurring prior to August 27, 1934, the date the order of release was entered and the new bond filed and approved. The guardian was also surcharged with the sum of $21,-

542.41 for defaults occurring subsequent to that date. Since defendant was legally released from further liability on said date, I am concerned only with the surcharge of $42,695.94.

Defendant objects to the procedure followed by plaintiffs in reopening the account and vacating the order approving same entered at the time of the order of release. It is insisted that said order could be attacked only in the manner provided in 12 O. S. 1941 §§ 984, 1031-1038, governing courts of record in modifying and vacating their orders and judgments. Defendant says that since the order approving said account, if valid, would shield it from liability for all acts of the guardian thereby settled, defendant was entitled to notice or summons upon the petition to vacate the order of approval.

But the county court may at any time during the pendency of the guardianship call in the guardian and reopen and re-examine an annual or other interim account and surcharge the guardian without notice to the surety. Aubrey v. DeLozier, 128 Okla. 79, 261 P. 192. The surety is not a necessary party (Southern Surety Co. v. Jefferson, 73 Okla. 7, 174 P. 563); and in the absence of fraud, the surety is concluded by the decree of the court. Title Guaranty & Surety Co. v. Owens, 114 Okla. 166, 244 P. 591.

The above statement applies only to the order approving the guardian's report. Since I am of the opinion that the order of release is valid, it is not necessary to give consideration to defendant's contention that it was entitled to notice of the petition to vacate said order.

Plaintiffs' cross-appeal questioning some of the credits allowed Waldrep may be disposed of and dismissed for failure to save exceptions to the court's special findings of fact on those items. The journal entry of judgment refers to the findings of fact and conclusions of law and is based thereon. Plaintiffs failed to except to those findings. Plaintiffs cannot now complain that they were incomplete or contrary to the evidence, or erroneous. See Stone v. Spencer, 79 Okla. 85, 191 P. 197; 64 C. J. 1282, § 1162.

I think the trial court's judgment surcharging defendant with items subsequent to the date of the court's order releasing it from further liability should be reversed.